536 A.2d 809

**COMMONWEALTH of Pennsylvania**

v.

**John Richard LOHMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1987.

Filed Jan. 25, 1988.

Craig P. Miller, Lock Haven, for appellant.

Donna L. Rae, Assistant District Attorney, Lock Haven, for Com., appellee.

Before WIEAND, TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the March 5, 1987 order of the Court of Common Pleas of Clinton County.

Appellant, John Richard Lohman, was charged with rape and simple assault of his fourteen (14) year old step-daughter. Appellant was found guilty by a jury of both charges. Post-verdict motions were timely filed and denied. Appellant was sentenced to a term of incarceration of five (5) to

ten (10) years.[1] Appellant's timely motion to modify sentence was denied. This appeal followed.

Appellant raises a total of nineteen (19) issues on appeal.[2] After reviewing the record on appeal, the briefs of the parties and the lower court opinion, we find that the court below has thoroughly addressed and correctly disposed of all but one of appellant's contentions which we will address herein.[3]

1. Appellant's sentence was to run consecutively with the sentence he received in the companion case, *Commonwealth v. Lohman*, J–69045 (210 Harrisburg, 1987), of five (5) to ten (10) years so that appellant actually received a minimum cumulative sentence of ten (10) to twenty (20) years.

2. "When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebutable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy." *Hughes v. GAF Corp.*, 364 Pa.Super. 311, 314, 528 A.2d 173, 175 (1987) (*quoting United States v. Hart*, 693 F.2d 286, 287 n. 1 (3rd Cir.1982)).

3. Appellant's nineteen (19) issues included the following:

1. Was the evidence presented sufficient to convict the appellant?

2. Whether the lower court erred in allowing Commonwealth witness, Lori Kalos, to testify via closed-circuit T.V.?

3. Did the trial court err in denying appellant's motion for a mistrial concerning the jury hearing the telephone ring in the Judge's chambers?

4. Did the trial court err in allowing Mr. Robyn Johns to testify?

5. Did the trial court err in denying appellant's requests for experts to be appointed and/or for examinations to be performed?

6. Did the trial court err in denying appellant's request for a subpoena duces tecum concerning Clinton County Women's Center and wise options for women files of these incidents?

7. Did the trial court err in limiting Linda Malloy's testimony?

8. Did the trial court err in allowing Michelle Kalos to testify?

9. Did the trial court err in not permitting Martha Lohman to testify about the actions of the victim around appellant?

10. Did the trial court err in permitting the Commonwealth to present evidence which contradicted information supplied in the bill of particulars?

11. Did the trial court err in permitting Officer Cindy Bies to testify concerning an alleged statement of appellant after he was arrested when the Commonwealth had not provided said statement to appellant through pre-trial discovery?

12. Did the trial court err in refusing to dismiss the charges when the Commonwealth failed to identify appellant as the person who committed the charges?

Appellant avers that the lower court erred in permitting a child witness to testify via closed-circuit T.V. This issue was recently addressed by an *en banc* panel of this court in *Commonwealth v. Ludwig*, 366 Pa.Super. 361, 531 A.2d 459 (1987).[4]

13. Did the trial court err in refusing to dismiss the charges when the Commonwealth produced evidence that the alleged assault and rape occurred on July 7, 1985 and the Commonwealth did not amend the information which charged him with committing these acts on July 10, 1985?

14. Should a new trial be granted due to the Assistant District Attorney's refusal and failure to comply with the court's order to turn over any statements of witnesses prior to their testimony?

15. Did the trial court err in objecting from the bench to the manner that defense counsel was using in cross-examining Commonwealth witness Betty Merryman when the Commonwealth had not voiced any objections?

16. Is the Mandatory Sentencing Statute, 42 Pa.C.S.A. § 9718 ambiguous?

17. Does 42 Pa.C.S.A. § 9718 require prior notice by the Commonwealth to the appellant before proceeding under this statute?

18. Did the sentencing court violate appellant's due process rights by not requiring the Commonwealth to prove by a preponderance of the evidence the needed elements to implement a mandatory sentencing statute?

19. Did the trial court err in denying appellant's exception to the prosecutor's closing remarks?

4. The holding in *Ludwig* reflects the legislature's resolution of this issue recently enacted at 42 Pa.C.S.A. § 5985(a) which reads:

(a) Closed-circuit television.—The child victim or material witness, through his parent or guardian, or, where applicable, the child's advocate or the attorney for the Commonwealth may move, for good cause shown, that the testimony of a child be taken in a room other than the courtroom and televised by closed-circuit equipment to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child shall proceed in the same manner as permitted at trial.

In *Ludwig,* the defendant was charged with sexually abusing his six (6) year old daughter. Although the child was able to discuss the details of the case, she "froze" and was unable to testify in front of her father during the preliminary hearing. To avoid this occurrence at trial, the court permitted the daughter to testify via closed-circuit T.V. The only people present with the child while she was testifying were the child's foster mother and a camera operator. All others observed the child's testimony from the courtroom.

The defendant in *Ludwig* asserted that permitting his daughter to testify via closed-circuit T.V. constituted a violation of his right to confront her as a witness, a right guaranteed by the Pennsylvania Constitution in Article 1, § 9.[5]

Judge Wieand, writing for the majority, espoused that the right of confrontation is not an absolute right.

The decided cases teach that the right of confrontation occasionally may be required to give way to considerations of public policy and the necessities of a case. A limitation can be placed on the right of confrontation, however, only where it is necessary because of a compelling interest; and any infringement must be as minimally intrusive as possible.

The use of closed circuit television in child abuse cases, where the child is unable or reluctant to testify against an adult member of the family, is a minimally intrusive infringement on the right of confrontation. Considerations of public policy require that testimony from the alleged victim of abuse be received without further psychological injury to the child. So long as the right of cross-examination is preserved in such cases and all interested persons can observe the alleged victim as he or she testifies, the use of closed circuit television is not prohibit-

5. Pa. Const. Art. I, § 9 reads in pertinent part "[i]n all criminal prosecutions the accused hath a right ... to meet the witness face to face ..."

ed by the confrontation clause of the federal or state constitution.

*Id.,* 366 Pa.Superior Ct. at 369, 531 A.2d at 463. (footnote omitted).

In the instant case, the child was reluctant to testify against her step-father. As long as the right of cross-examination was preserved and all interested persons could observe the child while she testified, the appellant's right of confrontation was not abridged.

In contrast to *Ludwig* in which the trial court permitted only the foster mother and camera operator in the room with the child while she was testifying, the trial judge, the court reporter and both counsels were all present during appellant's step-daughter's testimony. The appellant, unbeknownst to the jury, was sequestered in another room and was able to communicate with counsel via direct telephone line. The structure utilized by the trial court in the instant case went further to preserve appellant's constitutional right of confrontation than those deemed adequate in *Ludwig*. Thus, the lower court did not err in permitting the child to testify via closed-circuit T.V.[6]

Accordingly, the order of the lower court is affirmed.

**6.** The U.S. Supreme Court this term will consider whether screens and closed-circuit television are constitutional ways to reduce the emotional trauma that child abuse victims experience when testifying. *State v. Coy,* 397 N.W.2d 730 (Iowa 1986), *prob. juris. noted,* ── U.S. ──, 107 S.Ct. 3260, 97 L.Ed.2d 760 (U.S.1987). Currently, twenty-one states allow for the use of closed-circuit television to broadcast a child's live testimony simultaneously from one room to another during trial. Five states allow two-way broadcasts.