## Commonwealth v. Louden

*Bradford H. Charles, assistant district attorney,* for the commonwealth.

*Robert B. Keys Jr.,* for defendants.

EBY, *J.,* September 8, 1989 — This case comes before the court on defendants' post-verdict motions in arrest of judgment or, in the alternative, for a new trial. They shall receive a new trial.

Defendants are Larry E. Louden Sr. and Helen Louden, husband and wife. They were convicted on separate counts of endangering the welfare of a child (18 Pa.C.S. §4304) on May 9, 1988 following a jury trial.

The cumulative trial testimony elicted the following facts surrounding the charges brought against defendants. In July 1986 defendant Helen Louden applied for and received state certification to operate a day-care center in her home. The home was one-half of a double home, housing two separate families and divided by a common wall. In the other half of the house lived Margaret and Eli Kulovich, defendant Larry Louden's mother and step-father.

This day-care center remained in operation from July 1986 through July 20, 1987. Beginning in July 1986, Carol Wolfe, defendant Larry Louden's sister, began to hear yelling and other noises through the wall in the Kulovich's home adjoining the Louden household. She heard these noises on her visits to the Kulovich's, which occurred at least on a daily basis. Mrs. Wolfe thus became extremely concerned about the events occurring in the Louden home, knowing they operated a day-care center. She heard adults using obscene language, arguing over explicit sexual issues, directing obscenities at particular children, threats and smacking noises followed by children crying and screaming. Mrs. Kulovich heard identical noises.

Meanwhile, several parents who took their children to the Louden's day care became concerned as well. Their children had begun resisting going to the Loudens'. The children had also begun to misbehave, act violently, become clingy and withdrawn, have nightmares and became extremely wary of adult males. In fact, some of these parents took

steps to remove their children from the Louden's care even prior to the defendants' arrest.

Ultimately, Mrs. Wolfe's concern escalated to such a degree she contacted the appropriate authorities about the daily events in the Louden home. As a result of the information she supplied, along with independent police observation, the Loudens were arrested and each charged with endangering the welfare of a child.

Defendants were arrested on July 20, 1987. A pretrial hearing was held on April 26, 1988. At the conclusion of the pretrial hearing, over objections by defendants' attorney, the court determined pursuant to 42 Pa.C.S. §5985, which permits testimony via closed-circuit television, the commonwealth's child witnesses would be permitted to testify either on videotape or by closed-circuit television.

After jury selection but before opening statements, the videotaped testimony of each of the three child witnesses was taken. The witnesses were between the ages of seven and nine years old at the time they testified. The testimony of each witness was taken in a room at the Children and Youth Services offices with the following individuals present: the child witness, one parent, the court clerk, the court stenographer, defense counsel, the district attorney and the trial judge. Defendants were not present; however, they were seated in a room next door. While the child witness was completely separated from and unable to view defendants, defendants could view the events in their entirety on closed-circuit television. They were able to communicate with defense counsel at all times. The children's testimony was videotaped by Detective Wahman (also present during the testimony) and the tapes were shown to the jury during the course of the trial.

In addition, many other witnesses testified at trial in open court, on behalf of both the commonwealth and defendants, including defendants' sons, Larry Jr. and Scott, ages 10 and seven years respectively. No extraordinary precautions were taken prior to the testimony of either of these children. At the close of trial, a guilty verdict was returned by the jury against each defendant.

While defendants address several errors which they assert were made by the court, in support of their motion for a new trial, no assertions have been presented alleging the verdict was not sufficiently supported by the evidence. Because defendants have failed to articulate any arguments in support of their motion in arrest of judgment, we will focus our consideration only upon whether a new trial shall be granted. A new trial will be awarded when the trial court has committed a clear abuse of discretion or an error of law. *Commonwealth v. Jones*, 455 Pa. 488, 317 A.2d 233 (1974).

Defendants have raised three issues for our determination. First, they claim the trial court erred by allowing the three commonwealth child witnesses to testify via closed-circuit television and on videotape. Next, defendants allege the court erred in refusing to declare a mistrial upon the occurrence of two separate trial events: first, during Margaret Kulovich's testimony and second, during the prosecution's closing argument. Because our basis for awarding defendants a new trial rests upon their initial contention, we need not go on to consider any remaining issues.

The question of the constitutionality of permitting young witnesses to testify outside the courtroom either on videotape or by closed-circuit television has recently been an arena for much debate. Indeed, the issue has successfully perplexed many

courts in this commonwealth and throughout the United States. In 1986, two Pennsylvania statutes were enacted by the legislature which permitted use of videotape or closed-circuit television for good cause:

"§5984. *Videotaped depositions* —

"(a) *Depositions* — In any prosecution involving a child victim or child material witness, the court may, for good cause shown, order the taking of a videotaped depostion of the victim or material witness on motion of the child through his parent or guardian, or where applicable, the child's advocate or the attorney for the commonwealth. Such videotaped depositions, if taken for use at the preliminary hearing, may be used only at the preliminary hearing in lieu of the testimony of the child. If such videotaped deposition is taken for use at trial, it may be used only at the trial in lieu of the testimony of the child. The depositions shall be taken before the court in chambers or in a special facility designed for taking the depositions of children. Only the attorneys for the defendant and for the commonwealth, persons necessary to operate the equipment, a qualified shorthand reporter and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his deposition. The court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or see the defendant. Examination and cross-examination of the child shall proceed in the same manner permitted at trial. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense."

"§5985. *Testimony by closed-circuit television* —

"(a) *Closed-circuit television* — The child victim or material witness, through his parent or guardian, or, where applicable, the child's advocate or the attorney for the commonwealth may move, for good cause shown, that the testimony of a child be taken in a room other than the courtroom and televised by closed-circuit equipment to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the commonwealth, the court reporter, the judge, the persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child shall proceed in the same manner as permitted at trial." 42 Pa.C.S. §5984, §5985, enacted February 21, 1986, effective in 60 days.

This is the statute upon which the decision was made in the present case to permit the child witnesses to testify on videotape. The court found good cause had been shown by the commonwealth and so allowed the testimony as statutorily provided. We certainly do not dispute that, according to this standard, good cause was demonstrated.

At the portion of the pretrial hearing devoted to resolving this issue, testimony was heard of one

parent for each of the three children who ultimately testified.[1] A child therapist who had counseled one of the children also testified. The therapist testified one of the children had suffered mild trauma as a result of his experiences in the Louden home. Each of the parents stated that requiring the children to testify in open court could intimidate and frighten their children due to the many spectators and the presence of both defendants.

To the contrary, defendant Helen Louden testified that she and her husband had been in the proximity of the children after the arrest at various scouting events and no indicia of fear had been exhibited by these children. At the conclusion of testimony on this issue, the court entered the following order:

"After hearing and in consideration of all testimony adduced and argument of legal counsel, the court is satisfied good cause has been shown by the commonwealth in support of its petition for permission to use audio equipment at trial to merit the taking of testimony of [Z.U., T.U., J.E., and T.S.][2] in a room other than the courtroom and televised by closed-circuit equipment or videotape, to be viewed by the court and jury during trial."

Under the Pennsylvania statute, all that is required to allow the witnesses to testify outside of the presence of the defendant is a showing of "good cause." Unfortunately · that term is not defined. Therefore, fear, intimidation and mild trauma could certainly be considered to qualify as good cause under this law. The testimony, as believed by the court, was sufficient to meet the standard here, so broadly worded by its authors. Therefore, our in-

---

1. Although there was some pretrial discussion about a fourth child testifying, this did not occur.

2. See Pa.C.S. §5988

quiry must revolve upon whether "good cause" as set forth in the statute sufficiently meets a scrutiny of constitutionality under recent case law.

We begin our review with the 1987 case of *Commonwealth v. Ludwig,* 366 Pa. Super. 361, 531 A.2d 459 (1987), allocatur granted 541 A.2d 744 (1988) which set the precedent in Pennsylvania for use of closed-circuit television in cases of child sexual abuse. There, the defendant was charged with the sexual abuse of his six-year-old daughter. At the preliminary hearing, the little girl froze and could not testify. Thus, leave was granted for her to testify via closed-circuit television. Similarly, she was permitted to testify by closed-circuit television at the trial itself. The defendant was found guilty on all charges.

On appeal, the Superior Court affirmed the lower court's decision allowing the victim to testify by closed-circuit television. They found the right of confrontation under the Sixth Amendment as well as the Pennsylvania Constitution, while preferable, is not an absolute right. In situations such as this, there is "a difference between confrontation and intimidation," so that the right of confrontation may occasionally be required to give way to consideration of compelling interest. At the same time, any infringement must be as minimally intrusive as possible.

The court further went on to add: "The reliability of an abused child's testimony does not depend upon his or her ability to withstand the psychological trauma of testifying in a courtroom under the unwavering gaze of a parent who, although a possible abuser, has also been provider, protector and parent. The reliability of the child's testimony can be assured in such cases by requiring the child to submit to cross-examination while the jury and the accused observe the demeanor of the witness as he or she responds to questions." *Ludwig,* 366 Pa.

Super. at 370, 531 A.2d at 463. Where good cause is shown, the appellate court held the trial court properly acted within its discretion by allowing testimony by closed-circuit television.

Shortly thereafter, *Ludwig* was statutorily solidified when the legislature enacted 42 Pa.C.S. §5984, §5985. Since the law was codified, several legal developments have emerged upon this subject.

In *Commonwealth v. Lohman,* 370 Pa. Super. 404, 536 A.2d 809 (1988), allocatur granted 546 A.2d 621, the defendant was charged with the rape and assault of his 14-year-old stepdaughter. She was permitted to testify at trial via closed-circuit television and the defendant was ultimately found guilty of both charges. On appeal, the court cited *Ludwig* and held since the victim was reluctant to testify against her father, his confrontation rights were not violated. The court went on to note, however, the issue was soon to be considered by the U.S. Supreme Court and impliedly recognized their obligation to defer to the ultimate decision of the high court.[3]

In fact, a decision was reached in *Coy v. Iowa,* __ U.S. __, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) by the U.S. Supreme Court on June 29, 1988. Their decision clarified the issue of the constitutionality of the practice of a child witness being shielded from the defendant in a criminal case. The court held a screen between the witness and defendant at trial violated the Sixth Amendment right of face-to-face confrontation.

The appellant in *Coy* was convicted of two counts

---

3. See *Lohman, supra,* footnote 6, which states in pertinent part: "The U.S. Supreme Court this term will consider whether screens and closed-circuit television are constitutional ways to reduce the emotional trauma that child abuse victims experience when testifying. *State v. Coy,* 397 N.W.2d 730 (Iowa 1986), prob. juris. noted, __ U.S. __, 107 S.Ct. 3260, 97 L.Ed.2d 760 (1987)."

of lascivious acts with a child after a jury trial in which a screen was placed between defendant and the two 13-year-old witnesses. An Iowa statute permitted child witnesses to testify either by closed-circuit television or behind a screen. During their testimony appellant was able to perceive the witnesses dimly but the witnesses could not see appellant at all.

In the majority opinion, Justice Scalia writing on behalf of himself and Justices Brennan, White, Marshall, Stevens, and O'Connor thoroughly explained the ancient origins of the confrontation clause of the Sixth Amendment. The opinion distinguished the two types of protection provided by the confrontation clause; the right to physically face accusers and the right to conduct cross-examination.

The court ruled since the screen was specifically designed so that the witnesses could avoid viewing the appellant, it was "difficult to image a more obvious or damaging violation of the defendant's right to a face-to-face encounter." *Coy,* 101 L. Ed. 2d at 866. They specifically rejected the state's argument the confrontation interest was outweighed by the necessity of protecting abuse victims. Although the court noted there may in fact be an exception to the confrontation right, they declined to find any and stressed such an exception would be permitted only when necessary to further an important public policy. A generalized finding of trauma to the witness is insufficient. Instead, there must be an individualized finding the particular witness needs special protection to find any conceivable exception to the confrontation clause.

Justice O'Connor concurred in the majority opinion, and wrote separately for herself and Justice White. Although the concurrence found the rights under the confrontation clause are not absolute, but

only preferential, it agreed with the opinion of Justice Scalia that a case-specific finding of necessity and a compelling state interest of protecting child witnesses must be found.

Since that decision, no opportunity has arisen for courts in this commonwealth to review the existing statutes in light of the U.S. Supreme Court's determination of this issue. Indeed, the only subsequent case which has ventured near the perimeter of this specific issue applying the confrontation clause to child witnesses was *Commonwealth v. Groff,* 378 Pa. Super. 353, 548 A.2d 1237 (1988), decided September 20, 1988.

There, a seven-year-old witness testified in the open courtroom in the defendant's presence. Defense counsel moved to a location prior to cross-examining the witness so that he was not seated next to the defendant. The girl was told she could look at defense counsel and did not have to look anywhere she did not want to look, implying she was not required to fix her eyes upon the defendant. The Superior Court affirmed this particular arrangement on appeal. They additionally interpreted the *Coy* decision in the course of their opinion:

"In *Coy v. Iowa,* __ U.S. __, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the United States Supreme Court recently emphasized that under this [the confrontation] clause, the defendant has the right to face his accusers.

. . .

"The court ruled that the federal constitution did not permit the use of a physical barrier to shield witnesses from the defendant's gaze — at least in the absence of an individualized finding that the particular juveniles who testified required special

protection. See _ U.S. at _, 108 S.Ct. at 2803 (majority opinion) and _ U.S. at _, 108 S.Ct. at 2804-5 (O'Connor, J., concurring).

"On the other hand, the court in Coy cautioned that: 'The confrontation clause does not, of course, compel the witness to fix his eyes on the defendant; he may studiously look elsewhere but the trier of fact will draw its own conclusions.' _ U.S. at _, 108 S.Ct. at 2802." Groff, 378 Pa. Super. at 377, 548 A.2d at 1249.

The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . . " Similarly, the Pennsylvania Constitution, Article 1, section 9 states: "In all criminal prosecutions the accused hath a right . . . to meet the witnesses face to face. . . . "

The confrontation right in Pennsylvania is even broader than the Sixth Amendment right found in our federal Constitution since there is not only a general right to confrontation but also a more specific right to meet witnesses "face to face." "The confrontation clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." Coy, 101 L.Ed.2d at 864, quoting Pennsylvania v. Ritchie, 480 U.S. 39, 51, 94 L.Ed.2d 40, 53, 107 S.Ct. 989 (1987). Confrontation and cross-examination are also recognized as two specific individual rights in the Pennsylvania Constitution. Commonwealth v. McCloud, 457 Pa. 310, 322 A.2d 653 (1974). Pennsylvania courts have consistently held the right of confrontation encompasses more than the right of cross-examination. Ludwig, supra (Cirillo, J., dissenting).

The purpose behind the confrontation right rests

upon the theory that it is always more difficult to lie about a person when facing him and easier to lie "behind his back." *Coy,* 101 L.Ed.2d at 864. The trauma of testifying in front of the defendant can hardly be diminished or dismissed as unimportant, since it is that very trauma which is relied upon to justify the extraordinary precautions taken for child witnesses. *Coy, supra.* "That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token, it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." *Coy,* 101 L.Ed.2d at 866.

"A trial is akin to a purifying process whereby the ultimate product is truth. The right to face one's accuser is part of this process as are the solemn trappings of a courtroom and the right of cross-examination. These safeguards are the purifiers' through which an accuser's testimony must pass before it can be deemed believable. Each of them tests that accuser's veracity. To a large extent, they provide that test by making the act of giving testimony as stressful as possible. It is thought that stress helps to produce the truth by making it difficult to lie. The right of confrontation itself grew out of the psychological precept that it is more difficult to lie about a person in his presence. Sheltering a child witness from an important part of this system in order to protect her from stress is at odds with our constitutional protections. It allows her to testify free of the pressure which is essential to the truth-seeking process. Therefore; such testimony is inherently unreliable because it has not been 'purified.' Who is to say whether a child who refuses to testify in front of her alleged attacker has forgotten her testimony, emotionally froze, or is just

unable to lie in the person's physical presence."
*Ludwig,* 366 Pa. Super. at 395, 531 A.2d at 476
(Cirillo, *J.,* dissenting).

Considering the purpose and fundamental impor-
tance of the confrontation clause, we must carefully
scrutinize the Pennsylvania statutory law to confirm
that it does in fact conform to the constitutional
standards enunciated in *Coy.* The Pennsylvania stat-
utes require "good cause" be demonstrated to permit
a child to testify outside the presence of the defen-
dant. In *Coy, supra,* however, the U.S. Supreme
Court determined a generalized finding of good
cause was insufficient to withstand constitutional
scrutiny and bypass the defendant's right of con-
frontation. Instead, a *particularized* finding that a
witness needs *special* protection is required. A leg-
islatively imposed presumption of trauma will not
suffice.

Although at the time of our earlier decision on
this issue we were without the benefit of subse-
quent interpretations by higher courts, we must
recognize the law and constitutional protections
have not been broadened or modified in any man-
ner. We were then simply lacking the wisdom of
this interpretation as well as a determination on the
constitutionality of the Pennsylvania statutes. Hav-
ing since become apprised of the Supreme Court's
decision on this issue, we are forced to reconsider.

At the pretrial hearing, the judge fully complied
with the Pennsylvania statute, yet we are con-
strained to find that statute unconstitutional. It
provides for no individualized findings of specific
harm to a witness prior to allowing a child to testify
outside of the courtroom. Since it thus abridges the
fundamental right to confront an accuser as deter-
mined by the U.S. Supreme Court, we cannot abide
by the statute. "Our cases suggest, however, that

even as to exceptions from the normal implications of the confrontation clause, as opposed to its most literal application, something more than the type of ·generalized finding underlying such a statute is needed when the exception is not 'firmly . . . rooted in our jurisprudence.' . . . Since there have been no individualized findings that these particular witnesses needed special protection the judgment here could not be sustained by any conceivable exception." *Coy,* 101 L.Ed.2d at 867. (citations omitted)

The prosecution in this instance argues the holding of *Coy v. Iowa* does not apply to this case because there were individualized findings of harm found by the court. In the alternative, the commonwealth argues that even if there were no individualized findings of harm, the facts in this particular case provide a valid exception due to an important public policy such as the type alluded to in *Coy, supra.* We must reject both of these arguments.

The first assertion by the commonwealth is that contrary to the situation in *Coy, supra,* the court here did in fact make individualized findings of harm. Such findings permit the method of videotaped testimony to stand, having complied with the Supreme Court's mandate in *Coy, supra* and essentially going beyond the Pennsylvania statutes' requirements.

Prior to trial, a hearing was held during which one of the disputed issues was the manner in which the child witnesses for the commonwealth would testify. At that hearing, however, all testimony as well as the judge's findings were general. The testimony presented was the children would be frightened by the spectators and intimidated by defendants' presence. This was ultimately accepted by the judge as sufficient indicia of "good cause." However, this determination is not satisfactory under the *Coy* decision.

Instead, the testimony would have had to show some degree of harm more extreme than the stress which ordinarily occurs to most witnesses in a trial situation. Surely there are few who particularly savor the experience of relating difficult events in detail to strangers or who enjoy being faced with the person responsible for injury. Testifying in court is an inherently stressful situation which doubtless causes fright and anxiety. No additional explanation to this effect need be provided on the issue since the court required merely common sense to discern these factors.

Witness anxiety is part of the protection given the accused in our justice system. Fear does not permit one to be sheltered from the courtroom, abridging the accused's vital rights.

"A child's stress at testifying can be overcome; in all but the most extraordinary case, that child will eventually put the experience behind her. She may suffer and she may be terrified while testifying, but any emotional scars caused by the experience are unlikely to be permanent, especially when compared with the traumatic character of the events themselves. However, a defendant who is wrongfully convicted of a heinous crime will never overcome his conviction." *Ludwig,* 366 Pa. Super. at 398, 531 A.2d at 477 (Cirillo, *J.,* dissenting).

We thus hold fears, anxiety and mild trauma are not sufficient findings of particularized harm to justify removing a witness from the courtroom during his/her testimony. A more unique situation causing more severe harm than that suffered by the average person or child must be found for each individual who would be protected from the courtroom situation. The general findings here by the judge did not meet this criteria.

Further, we note the commonwealth's reliance on

the case of *State v. Eastham,* 39 Ohio St. 3d 307, 530 N.E.2d 409 (1988) in support of its position. While not precedent in Pennsylvania, we have. examined the case and find the prosecution's assertion it supports the commonwealth position erroneous. There, the child victim testified outside the courtroom by closed-circuit television. The procedure utilized was adopted in order to prevent the child from further traumatization. Examining this method of testifying in light of *Coy, supra,* the Ohio Supreme Court held the procedure violated defendant's confrontation rights. The court reasoned that even worse than in *Coy,* the child here was completely cloistered from the defendant. She was not even present in the same room with him while testifying, violating defendant's right to face his accuser and rendering the trial defective.

Specifically, the court reasoned:

"In the case at bar, the trial court noted that the many judicial and psychological hearings had affected the child and that it instituted the procedure 'to prevent any further . . . traumatization of the child.'

"However, the record fails to reveal any specific facts upon which the trial court based its finding. No particularized finding concerning the emotional well-being of this child and the necessity for this procedure exists. While attempts to comfort the child are laudable, we must bear in mind that the procedure employed by the trial court severely violated appellant's constitutional right to confrontation. The *Coy* holding makes that clear." *Eastham,* 530 N.E.2d at 412.

Finally, the commonwealth contends even if no individualized findings were made by the judge to support his findings, we should hold the situation here to be an exception to the confrontation clause under both the federal and Pennsylvania constitu-

tions. The basis for this request is the small gap for exceptions the Supreme Court left in the *Coy* opinion: "We leave for another day, however, the question whether any ·exception exists. Whatever they may be, they would surely be allowed only when necessary to further an important public policy." *Coy,* 101 L.Ed.2d at 867.

Before delving into the specific points raised by this assertion we note the prosecution's reliance on *Buckley v. State,* 758 S.W. 2d 339 (Tex. App. 1988) is misplaced. Without unnecessarily dwelling upon the particular facts and reasoning there, let it suffice to say that that case dealt with the admissibility of hearsay where the witness was a child. Thus, the separate right of cross-examination was considered. Such a case may be helpful were we dealing with that issue, as provided for under 42 Pa.C.S. §5986.[4]. However, that issue must be left for another day when a question of hearsay is raised. For the present, we shall consider only whether this situation with which we are faced constitutes a valid exception to the right of confrontation when individualized findings of harm are lacking.

Citing the possibility of an exception to the *Coy* holding, the commonwealth contends the current situation presents just such an exception. The assertion is based upon the important public policy of protecting child witnesses, evidenced by the statutory enactment by the legislature of 42 Pa.C.S. §5984 and §5985 providing child witnesses with alternate means of testifying. We certainly do not dispute the importance of protecting child witnesses who will be harmed if required to testify in court.

---

4. 42 Pa.C.S. §5986 allows ·for hearsay testimony, which would otherwise be inadmissible, in a dependency proceeding where indecent contact has been made or attempted upon a child.

"Thus I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. The protection of child witnesses is, in my view and in the view of a substantial majority of the states, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the court that more than the type of generalized legislative finding of necessity present here is required. But if a court makes a *case-specific finding of necessity,* as is required by a number of state statutes, our cases suggest that the strictures of the confrontation clause may give way to the compelling state interest of protecting child witness." *Coy,* 101 L.Ed.2d at 870 (O'Connor, *J.,* concurring). (citations omitted; emphasis supplied)

We cannot apply any exception under the necessity prong in this case because, no matter how important the policy of protecting child witnesses may be, no necessity was found by the court which required protecting these particular children from these particular defendants.

Our review of the circumstances reveals no necessity was demonstrated requiring these children to be shielded from the open courtroom. The only testimony concerning any potential harm consisted of the following: Mrs. U. testified she felt her children would be intimidated by all the people since they were very quiet in front of strangers and did not want to see defendants again; Mr. E. testified he felt his son would be afraid to testify in front of a lot of people or in front of defendants; Mrs. S. testified she felt her daughter would be calmer and more open on videotape and testifying in court

would make her afraid of possible punishment. The child therapist testified the children might be withdrawn and anxious.

While each witness testified as to their opinions concerning effects on the children, the children themselves were never interviewed or even observed by the court. The decision to allow videotaped testimony was made without the judge ever meeting or speaking with the children to objectively confirm or deny the validity of the parent's opinions. At the time of trial, the children were seven, eight and nine years old. None were found to be slow, mentally or psychologically unbalanced or in any way more vulnerable to the courtroom situation than average children.

A review of the children's videotaped testimony further shows none had problems testifying. Each child was coherent, was easily understood, was capable of answering in complete sentences. They exhibited little or no hesitancy answering questions, even on cross-examination. They knew why they were there and what they wanted to say. None testified to an extraordinary fear of defendants. In fact, there was some testimony that at least one of the children had been in contact with defendants subsequent to their arrest and had exhibited no fear of them.

We acknowledge in an open courtroom the situation may have been relatively more difficult for these children. We fully sympathize with the ordeal through which they have suffered. However, other measures may have been utilized to assuage their apprehension at the same time protecting defendants' confrontation rights. Admission to the courtroom could have been restricted during their testimony. Other than defendants, and specified third parties, this procedure would have allowed only

members of the jury to have been present in addition to those who were present during the videotaping.[5] The children could have been instructed, as was the child witness in *Groff, supra,* they need not look at defendants while testifying.

Whatever the alternatives, we do not believe the method used adequately protected defendants' rights since no particularized findings of necessity were made prior to permitting the videotaped testimony. The general finding of "good cause" by the court, although in compliance with the Pennsylvania statute, was not sufficient to permit the abridgment of defendants' right of confrontation pursuant to the interpretation adopted by *Coy v. Iowa, supra.* No individualized findings of particular harm were demonstrated. Therefore, defendants are entitled to a new trial.

## ORDER OF COURT

And now, September 8, 1989, for the reasons set forth in the accompanying opinion, defendant's motion in arrest of judgment is denied. Defendant's motion for a new trial is hereby granted.

---

5. See *Commonwealth v. Knight,* 469 Pa. 57, 364 A.2d 902 (1976).