THE STATE OF OHIO, APPELLEE, *v.* EASTHAM, APPELLANT.

[Cite as State *v.* Eastham (1988), 39 Ohio St. 3d 307.]

(No. 87-1619—Submitted June 7, 1988—Decided November 16, 1988.)

"* * *

*Jeffrey M. Welbaum,* prosecuting attorney, and *Phillip D. Hoover,* for appellee.

*Randall M. Dana,* public defender, *Harry R. Reinhart* and *Jill E. Stone,* for appellant.

*Per Curiam.* The issue presented in this action is whether the procedure employed by the trial court violated appellant's constitutional right to confront the witnesses against him. We hold that appellant's right was violated and, accordingly, reverse the judgment of the court of appeals.

Appellant possesses the right to confront the witnesses against him under both the federal and Ohio Constitutions. The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him;* to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."[4] (Emphasis added.)

Section 10, Article I of the Ohio Constitution provides in pertinent part:

"* * * In any trial, in any court, the party accused shall be allowed to appear and defend in person with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; *to meet the witnesses face to face,* and to have compulsory process to procure the attendance of witnesses in his behalf * * *." (Emphasis added.)

Appellant contends that the procedure employed by the trial court with regard to the child's testimony deprived him of his right to confront his accusers. Appellee argues that appellant's right of confrontation was not violated because the procedure allowed appellant to effectively cross-examine and preserved the ability of the trier of fact to observe the demeanor of the testifying witness.

The issue presented to this court by the instant action was recently addressed by the Supreme Court of the United States in *Coy* v. *Iowa* (1988),

---

[4] The right secured to criminal defendants by this amendment is applicable to the states by operation of the Fourteenth Amendment. *Pointer* v. *Texas* (1965), 380 U.S. 400, 403.

487 U.S. ___, 101 L. Ed. 2d 857, 108 S. Ct. 2798. In *Coy,* the defendant "was convicted of two counts of lascivious acts with a child after a jury trial in which a screen placed between him and the two complaining witnesses blocked him from their sight." *Id.* at ___, 101 L. Ed. 2d at 862, 108 S. Ct. at 2799. The defendant was able to hear and dimly see the girls, and while they could not see him, they were made aware he was in the room. In rejecting the defendant's confrontation argument the Iowa Supreme Court emphasized that the procedure allowed defense counsel to fully cross-examine both girls and allowed the trial judge and jury to observe the demeanor of the girls and determine the credibility of their testimony. *State* v. *Coy* (Iowa 1986), 397 N.W. 2d 730, 735. The United States Supreme Court rejected that analysis and reversed.

The *Coy* decision relies upon how firmly rooted the right to confront witnesses is in jurisprudential history:

"The Sixth Amendment's guarantee of face-to-face encounter between witness and accused serves ends related both to appearances and to reality. This opinion is embellished with references to and quotations from antiquity in part to convey that there is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.' * * * [Citation omitted.] What was true of old is no less true in modern times. * * *

"The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is.' Z. Chafee, The Blessings of Liberty 35 (1956), quoted in *Jay* v. *Boyd,* 351 U.S. 345, 375-376 * * * (1956) (Douglas, J., dissenting). It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' * * * That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." *Coy* v. *Iowa, supra,* at ___, 101 L. Ed. 2d at 864-866, 108 S. Ct. at 2801-2802. We find these observations to be equally applicable to the right of confrontation guaranteed by Section 10, Article I of the Ohio Constitution.

In its discussion as to whether the right of confrontation was specifically violated in the case before it, the United States Supreme Court stated: "The screen at issue was specifically designed to enable the complaining witnesses to avoid viewing appellant as they gave their testimony, and the record indicates that it was successful in this objective. * * * *It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter.*" (Emphasis added.) *Id.* at ___, 101 L. Ed. 2d at 2802, 108 S. Ct. at 2802. In the cause *sub judice,* the child witness was totally cloistered from appellant. As opposed to the defendant in *Coy,* the appellant was not in the same room as the witness. Barring any exceptions, it is clear that appellant's right of confrontation was violated by the procedure employed by the trial court and that his trial was defective.

While the *Coy* decision left the question of whether any exceptions exist "for another day," it did state that: "Whatever they may be, they would surely be allowed only when necessary

to further an important public policy." *Id.* at ____, 101 L. Ed. 2d at 867, 108 S. Ct. at 2803. We recognize that the protection of child victims of sexual abuse forms an important public policy in this state and across the nation. Many state legislatures, including our own, have established procedures which provide special consideration for sexually abused children to help them cope with the harsh demands of the legal system. See R.C. 2907.41; N.Y. Crim. Proc. Law 65.00-65.30 (McKinney Supp. 1988); Cal. Penal Code 1347 (West Supp. 1988); Ala. Code 15-25-3 (Supp. 1987); Ga. Code Ann. 81-1006.2 (Supp. 1988).

The Iowa statute involved in *Coy* in effect created a legislatively imposed presumption of trauma for all child witnesses called to testify. Based on this presumption, the screening procedure was employed. *Coy* dismissed such a generalized determination of whether an exception existed to the right of confrontation: "Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception." *Id.* at ____, 101 L. Ed. 2d at 867, 108 S. Ct. at 2803. In the case at bar, the trial court noted that the many judicial and psychological hearings had affected the child and that it instituted the procedure "to prevent any further * * * traumatization of the child."

However, the record fails to reveal any specific facts upon which the trial court based its finding. No particularized finding concerning the emotional well-being of this child and the necessity for this procedure exists. While attempts to comfort the child are laud-

able, we must bear in mind that the procedure employed by the trial court severely violated appellant's constitutional right to confrontation. The *Coy* holding makes that clear. Moreover, the procedure employed varied from the procedure adopted by our own General Assembly in one significant aspect. While R.C. 2907.41 was not yet in effect at the time, we do note that this section provides for a monitor to be placed in the same room as the witness so that he or she can observe the defendant.[5]

In light of the thin record before us concerning the necessity of this procedure, the United States Supreme Court's holding in *Coy* and the severity of the violation of appellant's constitutional right to confront witnesses against him, we cannot conclude that the strictures of both Confrontation Clauses must give way in this particular action. A more particularized finding of necessity would first be required for this court to employ an exception and uphold this judgment.

Based on the foregoing, we hold that the procedure employed by the trial court in this action violated appellant's rights under the federal and Ohio Constitutions to confront the witnesses against him.

Accordingly, we reverse the judgment of the court of appeals and remand this cause for a new trial.

*Judgment reversed
and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, WRIGHT and H. BROWN, JJ., concur separately.

---

[5] While we make no judgment on the constitutionality of that procedure today, we do recognize that it is somewhat less intrusive on a defendant's right of confrontation than the procedure employed in the cause *sub judice.*

HOLMES, J., concurring. I reluctantly concur in today's decision, as I feel I am constrained to do so by virtue of the recent plurality decision of the Supreme Court of the United States in *Coy* v. *Iowa* (1988), 487 U.S. ___, 101 L. Ed. 2d 857, 108 S. Ct. 2798. Initially, my position would be that of Justice Blackman and Chief Justice Rehnquist as expressed in their dissent in *Coy*, *supra*, at ___, 101 L. Ed. 2d at 870-876, 108 S. Ct. at 2805-2810. However, inasmuch as this court is bound by the interpretation of the Confrontation Clause expressed by the majority of that court, I write to echo the limitations on the "irreducible literal meaning of the clause," *id.* at ___, 101 L. Ed. 2d at 867, 108 S. Ct. at 2803, contained in the concurring opinion of Justice O'Connor. *Id.* at ___, 101 L. Ed. 2d at 868-870, 108 S. Ct. at 2804-2805.

The Confrontation Clause "reflects a *preference* for face-to-face confrontation at trial," *Ohio* v. *Roberts* (1980), 448 U.S. 56, 63 (emphasis added). However, "competing interests, if 'closely examined,' *Chambers* v. *Mississippi* [1973], 410 U.S. [284], * * * 295, may warrant dispensing with confrontation at trial." *Ohio* v. *Roberts*, *supra*, at 64; *Coy* v. *Iowa*, *supra*, at ___, 101 L. Ed. 2d at 869, 108 S. Ct. at 2804 (O'Connor, J., concurring). Thus, the "right to meet face to face all those who appear and give evidence at trial," *California* v. *Green* (1970), 399 U.S. 149, 175 (Harlan, J., concurring), "may give way in an appropriate case to other competing interests so as to permit the use of certain procedural devices designed to shield a child witness from the trauma of courtroom testimony." *Coy* v. *Iowa*, *supra*, at ___, 101 L.Ed. 2d at 868, 108 S. Ct. at 2803 (O'Connor, J., concurring). Whether the facts before us present such an appropriate case remains to be determined on remand.

H. BROWN, J., concurring. While I concur in the analysis and holding of the majority, I write separately to direct attention to three additional errors by the trial court which also mandate reversal. The trial court: (1) allowed a witness to testify about inadmissible hearsay statements by a child and to express his opinion that the child was being truthful in her allegations; (2) failed to properly establish the child's competence to testify; and (3) impermissibly restricted the scope of defense counsel's cross-examination.

I

At trial, the state called Dave Buchanan as a witness. Buchanan was employed as a consulting counselor at the child's school. Buchanan testified that he possessed a master's degree in counseling psychology, was not licensed as a psychologist and was neither trained nor qualified to conduct psychological testing. The children's services office had asked Buchanan to be present during visitation between the child and her mother "* * * to make sure the contact and communication as between them was as meaningful as possible." Buchanan also met with the child several times to assess her developmental abilities as part of an application for benefits from the Bureau of Disability filed by Mrs. Eastham, and to provide counseling.

The prosecuting attorney questioned Buchanan about statements the child made to him. Defense counsel objected to the admission of hearsay. The prosecuting attorney argued that the statements were admissible under Evid. R. 803(4) as statements made for purposes of medical diagnosis or treatment. The court allowed Buchanan to testify as to the statements made by the child to him. The court's ruling was erroneous.

Evid. R. 803 provides that the

following types of statements are not excluded by the hearsay rule:

"(4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of *medical* diagnosis or treatment and describing *medical* history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof *insofar as reasonably pertinent to diagnosis or treatment.*" (Emphasis added.)

The accompanying Staff Notes indicate that this exception is based upon "the assumption that a person will be truthful about his *physical* condition to a *physician* because of the risk of harmful treatment resulting from untruthful statements." (Emphasis added.) And further, "[t]he exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no *medical* significance would be admitted." (Emphasis added.)

The rule itself and the Staff Notes dictate the conclusion that only statements to *medical* personnel (*e.g.,* physicians, nurses or emergency medical technicians), made for the purpose of medical diagnosis or treatment, are excepted under this provision. See 1 Weissenberger, Ohio Evidence (1988), Section 803.47. The rule's narrow limitation is based upon the belief that the declarant's subjective motive generally guarantees the statement's trustworthiness. Since the effectiveness of the treatment depends upon the accuracy of information given to the physician, the declarant is motivated to tell the truth. *Id.* at Section 803.45.

Statements made during the course of treatment for a mental health condition, however, are not imbued with the same aura of reliability.

In such situations, a patient's veracity, perception, memory or narrative ability may be impaired.

The defendant was prejudiced by the court's error in allowing Buchanan to testify about statements made to him by the child, since Buchanan's testimony served to enhance her equivocal testimony. Without Buchanan's testimony, it is uncertain whether the defendant would have been found guilty.

The court also erred when it allowed Buchanan to express his opinion on whether the child was being truthful. Buchanan's opinion acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility.

The state suggests that Buchanan, because of his master's degree and years of employment, would be more skilled than the finder of fact in measuring the veracity of the child. The argument denigrates the capabilities of the fact finder. In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.

The state also argues that the defense attacked the child's "character for truthfulness" and therefore Buchanan's opinion of the child's veracity was admissible under Evid. R. 608(A). The record, however, indicates that the defense did not attack the child's credibility.

Even if the defendant had attacked the child's character for truthfulness, Buchanan's opinion as to her veracity about this *specific* situation would not be admissible since it was not an opinion concerning the child's general character for truthfulness. He stated that she told the truth when she made certain allegations.

## II

The court held a pretrial hearing to determine whether the child, who was six years old, was competent to be a witness.[6] The defendant was excluded from the hearing and although counsel were present, the court refused to allow them to examine the child or present evidence on the issue of competency. The trial judge conducted the examination himself and subsequently found the child competent to be a witness. The court abused its discretion by failing to determine whether she understood right from wrong, whether it is wrong to lie, the consequences of lying, the nature of an oath to tell the truth, or that she was capable of receiving just impressions of the facts and of relating them truthfully.

The transcript reveals the following facts. The judge began the hearing by giving the child some polished rocks and soda pop. He continued to ply her with these tangible rewards throughout the examination. The child's attention wandered during most of the session and the judge frequently prompted her to pay attention. She primarily responded to the judge's questions (many of which were leading) with nods of the head or monosyllabic answers. She answered several questions incorrectly or not at all. She was able to correctly identify the colors of some objects when asked and "lied" (*i.e.*, stated the wrong color) when asked to lie about the color of an object. However, she answered ambiguously when asked if it was good or bad to lie (answered "yes" to both questions). The judge failed to ask or ascertain whether the child understood right from wrong, what happens if a lie is told or whether she knew of the responsibility involved in promising to tell the truth.

Some Ohio courts have held that the test to be used in determining the competency of a witness under the age of ten is:

"* * * *His comprehension of the obligation to tell the truth* and his intellectual capacity of observation, recollection and communication. The nature of his conception of the obligation to tell the truth is of little importance if he shows that he will fulfill the obligation to speak truthfully as a duty which he owes a Diety or something held in reverence or regard, and if he has the intellectual capacity to communicate his observations and experiences." (Emphasis added.) *Hill* v. *Skinner* (1947), 81 Ohio App. 375, 377, 37 O.O. 213, 79 N.E. 2d 787, 789; *State* v. *Lee* (1983), 9 Ohio App. 3d 282, 283, 9 OBR 497, 498, 459 N.E. 2d 910, 911; *State* v. *Workman* (1984), 14 Ohio App. 3d 385, 388, 14 OBR 490, 494, 471 N.E. 2d 853, 859.

The child need not have religious beliefs or detailed knowledge of the nature of the oath. But it must be shown that the child understands the duty to tell the truth and that some punishment will follow if the child fails to tell the truth. *State* v. *Wilson* (1952), 156 Ohio St. 525, 529, 46 O.O. 437, 439, 103 N.E. 2d 552, 555; Klotter, Criminal Evidence (4 Ed. 1987) 136-137, Section 8.12. This showing was not made in the case at bar.

## III

Finally, the court erred when it

---

[6] Evid. R. 601(A) and R.C. 2317.01 state that "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly," are not competent to be witnesses.

restricted the scope of defense counsel's cross-examination.

In addition to foreclosing defense counsel from cross-examining the child at the competency hearing, the court initially expressed its intent to restrict counsel's questioning at trial by requiring them to submit proposed questions of the child prior to the trial, which then would be asked by the court. After reviewing the proposed questions, the court, recognizing the difficulty the procedure would cause, modified its ruling and permitted counsel to question the child under guidelines set by the court.

However, the court warned defense counsel not to bring into evidence facts relating to the ongoing custody dispute between Sharon Eastham and Tim Walters (the natural father) and the acrimonious relationship between Mr. and Mrs. Eastham and Tim and Mary Walters (the child's paternal grandmother). When defense counsel attempted to introduce into evidence information about the custody issue, the prosecuting attorney objected to the relevancy of the question and the court sustained the objection.

The court apparently believed that inquiry into the custody issue was inappropriate in a criminal trial. However, in Ohio, "cross-examination * * * [must] be permitted on all relevant matters and matters affecting credibility." Evid. R. 611(B). The defendant has adamantly and consistently denied sexually abusing his stepdaughter and has contended that the allegations were fabricated by the noncustodial father and his family to gain custody of the child. In addition, the child's testimony was equivocal and the medical evidence was inconclusive. Indeed, the medical testimony was as consistent with a theory that the child was not sexually abused as it was with a theory that she was. Had the trial court permitted examination on the issue of the custody dispute and the nature of the relationship among all the individuals involved, relevant information concerning bias, interest or a motive to prevaricate may have been revealed.

The three errors discussed above, in addition to the one noted by the majority, warrant reversal of the judgment of the trial court.

WRIGHT, J., concurs in the foregoing concurring opinion.