OPINION
This case arises out of the motion of Defendant, Amy Frantz ("Frantz") requesting that the court either suspend or have supervised visitation between Third-Party Intervenor Linda Dodson's ("Dodson"), the paternal grandmother, and Demi Dodson ("Demi"). In response, Dodson filed a motion requesting that the court find Demi's mother in contempt for failing to allow court-ordered grandparent visitation. Further, Dodson requested several changes in the current visitation, including a new exchange location, allowance for additional travel time due to Frantz's relocation, and compensatory visitation for time missed.
The trial court held a hearing on the motions on November 16 and 18, 1998. Dodson testified that since the end of May 1998, she has only had one unsupervised visitation with Demi for four hours. She claimed that she did not receive her three-day visitation in June and that on two other attempted visitations, Demi's mother insisted on going along. Dodson objected to Frantz's supervision of their visits because she could not spend quality time with Demi, and because it was against the trial court's visitation order.
Frantz testified that the reason she wanted visitations either suspended or supervised is that she believed Demi's father had sexually or mentally abused Demi, and his visitation was suspended during the investigation. She feared that Demi's grandmother would use her visitation to allow Demi to see her father. Additionally, she feared that Demi's grandmother would discuss Demi's father and upset her. Finally, Frantz claimed she was acting on the advice of Demi's counselor when she insisted on accompanying Demi on her visits with her grandmother.
Demi's counselor, Linda Rodgers, testified that Demi did not want to visit with her grandmother because she felt her grandmother had lied to her about her knowledge of the alleged incident with Demi and her father. Additionally, Ms. Rodgers felt that Demi's grandmother was making her feel guilty for not visiting with her father during this time. There was also a concern that Dodson would convince her to sway her testimony regarding her father and her grandmother, further upsetting Demi. Ms. Rodgers testified that Demi expressed all of these fears and concerns directly to her, but often with her mother present in the room. Based on her discussions with Demi and her mother, Ms. Rodgers advised Frantz, "that as a mother, that I would [go along on the visits]."
There were several witnesses, including the parties, who testified that Demi became very upset during some of the visitation exchanges. Demi testified that she did not want to visit with her grandmother without her mother along, but she could not express any plausible foundation for fear or dislike of her grandmother. In fact, she did not exhibit dislike of her grandmother at all.
It was clear throughout the hearing that there was no problem with the visitations between Demi and her grandmother prior to the allegations of abuse in May of 1998. Additionally, there was no testimony that Demi's grandmother had ever placed Demi in any danger. Further, there was no indication that Dodson had ever taken Demi around her father on their visits together. In fact, Demi's mother testified that the relationship between Demi's father and his mother has been rather strained in the past.
Following a two-day hearing on the matter, the trial court overruled Frantz's motion finding that Dodson's visitation should neither be suspended nor supervised. Additionally, the trial court held Frantz in contempt for failing to allow the court-ordered visitation. Moreover, the trial court changed the current visitation schedule with Dodson from the original order in February of 1996. The original order allowed visitation for four hours every other Thursday and three consecutive days (seventy-two hours) during the month of June. The current order allows visitation for five consecutive hours every week, seven consecutive days every summer, and seven consecutive days during Demi's spring break in 1999 to make up for lost visitation. Finally, Frantz was ordered to pay $250 fine or spend thirty days in jail. The fine and jail sentence was stayed pending the outcome of this appeal.
Frantz has appealed this decision of the trial court raising the following assignments of error:
 The trial court erred in its judgment that Amy J. Frantz was in contempt when she relied upon the advice of her child's psychologist.
 The court erred in striking and disallowing testimony of the child's treating licensed professional clinical counselor.
 The court [erred] [sic] in finding Amy Frantz in contempt for not permitting unsupervised visitation with her grandmother when the evidence was clear that the child was suffering extreme emotional trauma.
 The court erred in finding Amy Frantz in contempt when she never refused to let Demi Dodson visit with her grandmother.
 The court erred in expanding the visitation rights of the grandmother when there was no motion before the court to expand visitation, and the expansion was meant to punish the mother for contempt.
 The court erred in not prohibiting the grandmother from allowing any contact between her son and the minor child and in not ordering supervised visitation of the grandmother.
 I
Assignments of error I, III and IV all address the trial court's placing Frantz in contempt and will be addressed together. Frantz asserts that the trial court erred in finding her in contempt of court because 1) she relied on Demi's counselor's recommendations; 2) the evidence was clear that the child was suffering from extreme emotional trauma; and 3) she never refused to let Demi visit with her grandmother.
A court has the authority under R.C. 2705.02(A) and under its inherent power to punish disobedience of court orders. State exrel. Adkins v. Sobb (1988), 39 Ohio St.3d 34, 35. Such a finding of contempt will not be reversed absent an abuse of discretion.Id. It is well settled that an abuse of discretion exists where the court's attitude is unreasonable, arbitrary or unconscionable.State v. Montgomery (1991), 61 Ohio St.3d 410, 413.
A person charged with contempt may only defend by demonstrating that he had no power to obey the order, or that he substantially complied with the order. Riad v. Riad (Oct. 9, 1986), Montgomery App. Nos. CA 9589 and CA 9732, unreported, citing State v. Cook (1902), 66 Ohio St. 566. Acting in good faith or even on the advice of counsel is not a defense to civil contempt. Sobb, supra at 36. The mere fact that violation of the court order was done innocently does not make it cease to be a violation. Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140.
In the present case, Demi's mother felt that Demi was emotionally traumatized apparently due to the alleged incident with her father. Demi's counselor, Ms. Rodgers, advised Frantz that "as a mother," she would go with Demi on her visits with Dodson. Based on these factors, Frantz felt she was doing the right thing by requiring Demi's visits with her grandmother to be supervised or not exercised. However, as stated in a case cited by Frantz, her "opinion as to the visitation rights of the [grandmother] cannot substitute for that of the trial court's."Smith v. Smith (1980), 70 Ohio App.2d 87, 90. Although these facts may indicate that Frantz's violation of the court order was not willful or intentional, she still violated the court order.
In the judgment entry of February of 1996, the trial court awarded Dodson visitation with Demi on a regularly scheduled basis. The court order for visitation was specific and did not mention any required supervision. Frantz violated this court order by requiring her supervision of Demi's visits as a condition of the visits. Therefore, the trial court did not abuse its discretion in finding Frantz in contempt of its February 1996 order. Frantz's first, third and fourth assignments of error are accordingly overruled.
 II
In her second assignment of error, Frantz alleges that the trial court erred in not allowing certain testimony from Ms. Rodgers, Demi's counselor, regarding statements made by Demi during their sessions. Although she concedes these statements are hearsay, she argues they are admissible under either Evid. R. 803(3), then existing mental, emotional, or physical condition, or Evid. R. 803(4), statements for purposes of medical diagnosis or treatment.
The trial court has broad discretion in the admission or exclusion of evidence, which cannot be disturbed absent a showing of abuse of this discretion. State v. Combs (1991), 62 Ohio St.3d 278,284. As previously stated, an abuse of discretion only exists where the court's attitude is unreasonable, arbitrary or unconscionable. Montgomery, supra.
Initially, we find that none of the statements referred to would be admissible under Evid. R. 803(4), statements for purposes of medical diagnosis or treatment. The reliability of these hearsay statements derives from "the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements." State v. Eastham (1988), 39 Ohio St.3d 307, 312. Statements made to a mental health professional do not always have the same indicia of reliability. Id. Some courts have allowed testimony of statements made to counselors and social workers "as long as they were being made for purposes of diagnosis and treatment." Presley v. Presley (1990), 71 Ohio App.3d 34, 39. There is no indication in the present case of any diagnosis or treatment rendered or anticipated by Linda Rodgers.
Further, a particular trustworthiness problem exists when the statements are made by a young child, who is not "personally motivated to seek treatment." State v. Dever (1992), 64 Ohio St.3d 401,407. Likely the child did not initiate seeing the doctor or counselor, so it is doubtful the child is concerned that her statements may somehow affect her treatment. Id.
Particularly in the case of a child's counselor, there is no basis for believing the child will be honest, as her health does not depend on it. See In re Legg (1993), 68 Ohio Misc.2d 1, 5. Accordingly, statements of a young child to her counselor do not possess the indicia of reliability that motivated the adoption of Evid. R. 803(4).
Frantz also claims these statements should be admissible under the hearsay exception Evid. R. 803(3), then-existing mental, emotional, or physical condition. These statements are considered trustworthy because of their spontaneity. State v. Sutorius
(1997), 122 Ohio App.3d 1, 8. This testimony is limited to a reflection of the state of mind of the individual, not the reasons underlying that state of mind. Id., citing State v. Apanovitch
(1987), 33 Ohio St.3d 19, 21-22. The Supreme Court also required that the testimony point toward the future and not refer to the past. Id.
In the present case, the following four segments of testimony were objected to by opposing counsel and sustained by the court.
 Q. Did the subject of visiting with the grandmother ever come up again?
Yes.
And do you know when that was?
 Okay. On the 21st after she had gone through a deposition and I knew that she was going to have a visit with her grandmother, I told her to have fun with her grandmother and do grandma fun things. I was trying to encourage her because she was going to be going with her grandmother.
 Then when that visit took place, on the 28th is when [Demi] came back and said * * *
* * *
 Q. And did you make any observations about the child at that time?
Yes.
What were those observations?
 She was feeling very pressured by her grandmother. There were some direct — there were some direct quotes that she had said that grandmother said. Demi told me directly things that she had said that were of an influential nature to try to —
* * *
 Q. Can you tell me whether or not you made any observations that Demi seemed to be upset?
Yes. She was very upset about it.
And how did you know that?
 Because of the things that she shared with me directly about the testimony and accusing her of lying.
* * *
 Q. And did you make any observations about whether or not the child was upset about that subject at that time?
* * *
 I have observed tension and anxiety over the issue of visiting with the grandmother.
The first three portions of testimony all involve things Demi said about past visitations with her grandmother. None of them contain statements regarding Demi's state of mind, but instead simply statements made by Demi about past visits with her grandmother. These statements not only are in the past, but do not even address Demi's state of mind. Therefore, none of the first three qualify under the then-existing state of mind hearsay exception.
The last statement does potentially reflect Demi's state of mind regarding visitation with her grandmother. However, as stated before, the trial court has broad discretion in determining the admissibility of evidence. This statement is Ms. Rodger's opinion of what emotions Demi was experiencing at that time. There is no actual statement by Demi that she was anxious or upset about visitations with her grandmother. Further, there is no evidence that Ms. Rodgers was ever qualified as an expert during this hearing. Although she gave her credentials as a mental health counselor, the trial court never stated on the record that he recognized her as an expert for purposes of this case. Therefore, her opinion of Demi's emotional state would not be given any more weight than a lay person.
Finally, even if disallowing this testimony was a clear violation of Evid. R. 803(3), it would constitute harmless error. There was testimony from several witnesses stating that at various times Demi was upset about the visitation situation. The testimony of Ms. Rodgers would have been cumulative. Therefore, its exclusion did not prejudice the outcome of the hearing.
Based on the foregoing, Frantz's second assignment of error is overruled.
 III
In her fifth assignment of error, Frantz argues the court was without authority to increase Dodson's visitation as there was no motion before the court. R.C. 3901.051(K) provides that in a contempt situation, the trial court may award compensatory visitation to the complainant. However, the trial court does not have the power to sua sponte increase visitation as a sanction for contempt. West v. West (Dec. 7, 1994), Montgomery App. No. 14600, unreported, p. 5. "Modification of visitation or support may be accomplished only after notice and hearing upon motion to invoke the continuing jurisdiction of the trial court." Id., citingAndrulis v. Andrulis (1985), 26 Ohio App.3d 164, syllabus.
In its decision, the trial court ordered that Demi spend seven consecutive days with Dodson on her spring break in 1999 as compensatory visitation. Additionally, Dodson was awarded five consecutive hours each week and seven consecutive days during the summer as the new visitation order. Excluding the compensatory visitation, this new order equates to 423 hours of visitation per year, as opposed to 176 hours per year in the original order. Clearly, the trial court increased Dodson's visitation.
However, there was no request in either of Dodson's written motions or during the hearing to increase visitation. Dodson requested compensatory visitation for the weeks that were missed, and she requested additional drive time due to Frantz's relocation forty-five minutes away. The trial court specified in its order that the spring break award was compensatory visitation, which more than compensates for the visitation hours missed. Further, this new visitation order was not stayed, so Dodson should have been benefitting from it since its filing on January 28, 1999. Dodson has been more than compensated for her lost visitation.
Certainly, the trial court sua sponte increased visitation beyond any request in Dodson's motion. Dodson simply asked for travel time, which would require adding additional time to the four hours every other week. The trial court not only increased the hours, but required visitation every week, and more than doubled the summer visitation. We are not stating an opinion that Dodson's visitation should not be increased, only that the trial court did not have the jurisdiction to increase it without a motion. Therefore, Frantz's fifth assignment of error is sustained and we will remand to the trial court to reconsider the visitation order in light of this opinion.
 IV
Finally, Frantz claims in her sixth assignment of error that the trial court erred in not prohibiting Dodson from allowing contact between Demi and her father or supervising their visitation. A trial court has the discretion to award visitation rights to a grandparent or other relative under R.C. 3109.051(B) if it is in the best interest of the child. In making this best interest determination, the trial court should consider the factors listed in R.C. 3109.051(D). However, the trial court's discretion in allowing or modifying visitation is very broad.Bodine v. Bodine (1988), 38 Ohio App.3d 173, 175, citing Applebyv. Appleby (1986), 24 Ohio St.3d 39.
The trial court did not mention any restrictions on Dodson's visitation with her granddaughter in its decision. Although Frantz requested that Dodson's visits be "supervised," she did not specifically request that the court limit her actions during the visitation. The trial court found that Dodson's visitation with her granddaughter should resume and should not be supervised. This finding precisely addresses Frantz's request. Further, there was a specific finding that the court felt Demi would benefit from continued contact with both her father and her grandmother. There was unrefuted testimony during the hearing that Dodson had at one time been appointed by the court to supervise visitation between Demi and her father. Based on this information, the trial court did not abuse his discretion by placing no restrictions on Dodson's visitation. Accordingly, Frantz's sixth assignment of error is overruled.
Based on the foregoing, Frantz's first, second, third, fourth and sixth assignments of error are overruled, and the trial court's decision as to those matters is affirmed. Frantz's fifth assignment of error is sustained. The trial court's decision regarding the revised visitation schedule is reversed and remanded for actions consistent with this opinion.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Valerie R. Wilt
Mary K.C. Soter
Michael A. Catanzaro
Gregory D. Cox
Hon. Joseph Monnin