{¶ 79} While I concur with the majority's resolution of the first assignment of error, I respectfully dissent from its conclusions regarding the second and third assignments of error and from its decision to reverse this conviction.
 {¶ 80} Regarding the second assignment of error, there appear to be two independent bases for the majority's view: first, the majority concludes that Young's conviction for grand theft motor vehicle is based on insufficient evidence; second, it concludes that the trial court's failure to instruct the jury on the lesser-included offense of unauthorized use of a motor vehicle rises to the level of plain error even though Young did not request such an instruction. I disagree with each.
 {¶ 81} A challenge to the sufficiency of the evidence presents a legal issue for the court to resolve regarding whether the state presented evidence which, if believed by the jury, would support a conviction.
 {¶ 82} The elements of theft are set forth in R.C. 2913.02(A) as follows:
{¶ 83} No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
{¶ 84} (1) Without the consent of the owner or person authorized to give consent;
{¶ 85} (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
{¶ 86} (3) By deception;
{¶ 87} (4) By threat;
{¶ 88} (5) By intimidation.
 {¶ 89} Here, the issue presented to the jury concerned whether Young intended to deprive Shelly Glenn of her vehicle. R.C. 2913.01(C)(1) defines "deprive" as follows:
{¶ 90} "Deprive" means to do any of the following:
{¶ 91} (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use * * *.
 {¶ 92} The facts reveal that Glenn, Young's ex-girlfriend, agreed to meet him and take him to a job fair. He then became verbally abusive and grabbed her car keys; she, however, agreed to accompany him to the job fair. When he stopped at a bar, she ran into a furniture store where he slapped her. She remained there, and he left with her car. This circumstance prompted her call to the police.
 {¶ 93} On previous occasions when he would borrow her car, he would return it. This time, however, the police recovered it from his mother's garage, where it was stored behind closed doors.
 {¶ 94} From these facts, I contend that after viewing the evidence in a light most favorable to the prosecution, the jury could have concluded that Young intended to deprive Glenn of her car for such time as to "appropriate a substantial portion of its value or use." Accordingly, in my view, the second assignment of error should be rejected.
 {¶ 95} Next, although not raised as an assignment of error, the majority asserts plain error in that the trial court did not instruct the jury on the elements of the lesser-included offense of unauthorized use of a motor vehicle. To prevail on a plain error analysis, even the majority recognizes, first, that the record must demonstrate the error and, second, that, but for the error, the result of the trial clearly would have been different.
 {¶ 96} R.C. 2913.03(A) sets forth the elements for unauthorized use of a vehicle:
{¶ 97} No person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent.
 {¶ 98} In this case, however, Young's counsel did not request a jury instruction on unauthorized use; rather, counsel chose to argue the state could not establish its case. Failure to request a jury instruction on a lesser-included offense is a matter of trial strategy best left to counsel's discretion. See State v. Griffie (1996), 74 Ohio St.3d 332,333, 1996-Ohio-71, 658 N.E.2d 764. See, also, State v. Turner (Aug. 23, 2001), Cuyahoga App. No. 78630 ("The decision not to request an instruction on a lesser included offense is a matter of trial strategy within the wide range of professionally competent assistance * * *.").
 {¶ 99} As the Fourth Appellate District stated in State v.Smith (Mar. 6, 1996), Lawrence App. No. 94 CA 37:
{¶ 100} Additionally, we note that trial counsel's failure to request an instruction on the lesser included offense of assault could be viewed as sound trial strategy. A tactical decision to confine the charge to felonious assault and to seek acquittal rather than invite conviction on the lesser offense can constitute sound trial strategy. In other words, the failure to request the lesser included offense instruction suggests that appellant was pursuing an "all-or-nothing" defense and seeking an outright acquittal. If the jury had found that the prosecution had failed to prove the felonious assault charge beyond a reasonable doubt, appellant would have been acquitted. Trial counsel may have determined that this result was likely and may have chosen not to give the jury the opportunity to find appellant guilty of another crime by requesting a lesser included offense instruction.
 {¶ 101} The majority's decision today signals error on the part of a trial court unless it instructs on lesser-included offenses, whether requested by defense counsel or not. This is dangerous precedent because it will deprive criminal defendants of the "all-or-nothing" strategy employed when weakness is perceived in the state's case.
 {¶ 102} Here, the majority has determined that the state presented insufficient evidence on the intent to deprive element of theft; if that were true, Young would have been acquitted, and that hypothesis fortifies defense counsel's decision not to seek a lesser offence instruction. Today's decision strips defense counsel of the opportunity to employ appropriate trial strategy and signals a trial court's duty to compel jury consideration of compromise verdicts. This is a dangerous and slippery slope.
 {¶ 103} Beyond this precarious position for all defense counsel, the facts here do not meet the plain error standard. How, under the circumstances here, where a question exists as to Young's intent to deprive Glenn of her vehicle, can the majority confidently predict that the result of the trial would have been different if the trial judge had simply instructed the jury on the lesser offense of unauthorized use? In my view, it cannot, and, therefore, this is not plain error.
 {¶ 104} As for the third assignment of error, the majority also contends the court committed plain error in permitting Detective Jackson to give his opinion on the victim's credibility.
 {¶ 105} In support of this proposition, the majority relies onState v. Boston (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, where the court held in its syllabus, "An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."
 {¶ 106} In my view, the majority's reliance on Boston is misplaced because that case is factually distinguishable from the circumstances presented here. Courts have properly limited Boston to whether an expert can testify as to the truthfulness of a child abuse victim. As the Ninth Appellate District in State v. Hodge (Oct. 18, 2000), Lorain App. No. 98CA007056, stated:
{¶ 107} In Boston the Ohio Supreme Court considered the issue of whether an expert could comment on the veracity of the victim in a child abuse case. The Court held that "an expert may not testify as to the expert's opinion of the veracity of the statements" of the victim because such testimony "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." Boston, 46 Ohio St.3d at 128-129, quoting State v. Eastham (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (H. Brown, J. concurring). * * *
 {¶ 108} Here, unlike the situation in Boston, Detective Jackson's testimony concerning Glenn's truthfulness did not carry the decisive weight of a child abuse expert and, therefore, did not infringe upon the jury's role in this regard. Further, Detective Jackson did not offer testimony as to Glenn's veracity as a witness; rather, he merely stated that he believed the statement she gave him during his investigation.
 {¶ 109} In this regard, we should follow our decision in In reSubutidze (Mar. 8, 2001), Cuyahoga App. No. 77879, where Officer Florman testified over objection that she believed the victims and that she believed they were truthful. We concluded there:
{¶ 110} In context, therefore, Florman was not vouching for the victims' credibility; rather, she explained the investigative procedure she had followed in order to rebut appellant's implied charge of impropriety. State v. Norman (1982), 7 Ohio App.3d 17, 453 N.E.2d 1257; State v. Morris
(1983), 8 Ohio App.3d 12, 455 N.E.2d 1352; see, also, State v. Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122, unreported. Florman's testimony also was given to explain the reason for the time discrepancy as set forth on A's written statement. Since the testimony was admitted for proper purposes, therefore, the trial court did not err. State v. Rogers (May 21, 1998), Cuyahoga App. Nos. 72736, 72737, unreported.
 {¶ 111} The facts of this case are similar to that of Shubutidze. Here, Detective Jackson merely testified as to the consistency of Glenn's story as part of his own evaluation of her as a witness. Moreover, under the plain error analysis, given the other facts of this case, I am unable to conclude that, but for the challenged portion of Detective Jackson's testimony, the result of trial would have been different. Based on my review of the record, it is my opinion the result would have been the same.
 {¶ 112} Based on the foregoing, I would reject the third assignment of error and affirm the judgment of conviction. Accordingly, I dissent in part and concur in part.