DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant Ronald Hensley guilty of aggravated robbery and further found that appellant had a firearm on or about his person or under his control while committing the offense of aggravated robbery. Hensley's appeal raises the following assignments of error:
 {¶ 2} "Assignment of Error No. 1:
 {¶ 3} "Appellant received ineffective assistance of counsel when his attorney failed to object to a prejudicial and improper question and answer (TR 352) and to the prosecutor's misstatement of the burdens and of counsel's own arguments during rebuttal closing argument (TR 402).
 {¶ 4} "Assignment of Error No. 2:
 {¶ 5} "The trial court committed error when it failed to grant appellant's motion for judgment of acquittal as to the firearm specification (TR 233-240, 461-464) and the evidence was insufficient to support the conviction on that specification.
 {¶ 6} "Assignment of Error No. 3:
 {¶ 7} "Appellant's conviction for aggravated robbery was against the manifest weight of the evidence."
 {¶ 8} On October 20, 2001, Donald Kincaid was working his regular job as a pizza delivery driver for Bambino's Pizza on Airport Highway in Toledo, Lucas County, Ohio. In that job, Kincaid drove his own car to make pizza deliveries. At approximately 11:30 p.m. Kincaid was ordered to make a delivery to 1345 Laurel Street. When he arrived at the stated address, Kincaid began to exit the car but a man approached him and Kincaid handed him the pizza. The man took the pizza with his left hand then turned to set the pizza on the porch. Kincaid believed the individual was getting his money. Instead, the man returned to Kincaid, pointed what Kincaid believed was a small caliber handgun at him, and said "Give me your car and money or I'm gonna shoot you." Kincaid testified at the trial below that the assailant had the weapon in his left hand and that his right hand was tucked under the waistband of a brown Carhartt hooded jacket. Kincaid then exited his vehicle and handed the assailant approximately $100. The assailant climbed into Kincaid's car and took off down the street. There were no lights on in the house at 1345 Laurel or in either of the houses to the right or left of 1345 Laurel. Kincaid then ran across the street to another house and pounded on the door. The owners of that home called the police, who arrived shortly thereafter.
 {¶ 9} Kincaid's car was found a short distance from the location of the robbery, but the brakes and clutch were "fried." Kincaid testified that the car had a standard transmission and that the assailant had not released the emergency brake when he drove away. Officers from the Toledo Police Department arrived at the scene to investigate the robbery and took a statement from Kincaid. Kincaid described the assailant as a white male, with dark hair, approximately five feet ten inches tall, and weighing approximately 170 pounds. At the trial below, Kincaid testified that he described the assailant as having a mustache. The police report, however, does not include a mustache in the victim's description of the robber.
 {¶ 10} On October 25, 2001, Detective Rick Singlar of the Toledo Police Department showed Kincaid a photo array that contained six pictures. Kincaid immediately identified appellant as the person who robbed him. Appellant was subsequently indicted and charged with one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and one count of robbery in violation of R.C. 2911.01(A)(2). In addition, a firearm specification was attached to the aggravated robbery count.
 {¶ 11} The case proceeded to a jury trial on November 19, 2002, at which the following evidence was presented. In addition to the facts set forth above, Kincaid identified appellant in court as the person who robbed him. He also testified that he felt threatened by appellant and did not believe that the gun was a toy, although he admitted that it could have been fake. Kincaid further felt threatened because of appellant's statement that he would hurt Kincaid if he did not give appellant his money and his car.
 {¶ 12} The state also called two Toledo police officers to testify at the trial below. Detective Alexander Schaller was in his marked patrol unit on the evening of October 20, 2001, when he received a call regarding the robbery. The call also included a description of the stolen vehicle. While responding to the location of the robbery, Schaller and Officer Paul Toth, who was in training and riding in the patrol vehicle with Schaller, observed a vehicle matching the description of the stolen car parked on the side of Arlington Street in the vicinity of Arlington and Francis. Schaller and Toth watched the vehicle from a hidden location until an unmarked unit arrived to investigate. They then proceeded to the location of the robbery where they encountered Kincaid. Schaller testified that Kincaid was visibly shaken but that he gave a description of the assailant to the officers and that Toth filled out a crime report. In investigating the robbery, Schaller testified that while he knocked on the door at 1345 Laurel he did not knock on the doors of the houses on either side of 1345 Laurel. No one answered the door at 1345 Laurel.
 {¶ 13} Subsequently, Detective Rick Singlar was summoned to the scene. After speaking to Kincaid, Singlar transported him to the Arlington Street location where Kincaid identified the abandoned vehicle as his. Singlar testified that he dusted the car for fingerprints, found no useable prints or other evidence, and then released the car to Kincaid. The next day, Singlar received a Crime Stopper call which provided a name and description of a suspect. Based on that information, Singlar prepared a photo array of six men who were similar in appearance. On October 25, 2001, he showed the photo array to Kincaid, who immediately identified appellant as the individual who had robbed him. Singlar testified that appellant was subsequently arrested and charged with the robbery, but admitted on cross-examination that he never interviewed him. He also admitted that he never interviewed Tina Gauley or Alicia Salazar, two witnesses whose names were provided to him by appellant's defense attorney. Appellant's counsel then questioned Singlar about Tom Wallace, the individual whom appellant has insisted throughout these proceedings, committed the offense. Singlar stated that, pursuant to appellant's counsel's request, he had previously interviewed Wallace in the jury room after Wallace voluntarily presented himself for questioning. Singlar further testified that he read Wallace his Miranda
rights and that Wallace signed a form waiving those rights. Singlar also testified about his investigation of the offense. Singlar stated that after Kincaid identified appellant as the assailant, he considered appellant a suspect, but only visited his home once and, after being told by appellant's son that appellant no longer lived there, did not seek a search warrant or attempt to locate the gun or Carhartt jacket. Singlar further testified that through his investigation he learned that appellant sometimes stayed with Carol Menifee, whose address is 1351 Laurel, right next door to 1345 Laurel.
 {¶ 14} The state then rested its case and appellant moved for a directed verdict on the firearm specification and on the aggravated robbery and robbery charges. The court denied the motions. Before appellant presented his case, and outside of the presence of the jury, the parties discussed the issue of Tom Wallace. Wallace had been subpoenaed to testify in the case. Although he did appear on the first day of trial, he abruptly left and did not return. The court, therefore, issued a warrant for his arrest, but officers of the Toledo Police Department could not locate him. The court then allowed appellant's counsel to proffer Wallace's statement as follows: "It is my belief, although I was not present during that jury room interrogation, that Mr. Wallace essentially confessed to Detective Singlar this instant offense. I believe that Mr. Wallace would have told Detective Singlar that it was he, Tom Wallace, that robbed Donald Kincaid and specifically not his friend Ronald D. Hensley." When questioned by the court, Singlar admitted that the proffered statement was accurate.
 {¶ 15} Appellant then presented his case. Through the witnesses that he presented, appellant tried to establish that Tom Wallace was the true perpetrator of the crime, that he had made comments to others that he had robbed the pizza delivery driver and that on the night of the robbery, appellant was home with his step-father watching television. Tina Gauley, Carol Menifee's daughter, testified that she lives at 1351 Laurel, next door to the address where the robbery occurred. Tina stated that on October 20, 2001, she was at home with her friend Alicia Salazar. Her mother was also home but was sleeping at the time of the robbery. On that evening, the electricity had been shut off to the house and she and Alicia were in her bedroom looking out of the window. Tina testified that Tom Wallace was her mother's boyfriend at the time and that he had been living at the house. She then stated that at about 11:30 that evening, she and Alicia watched out of her bedroom window as Tom went to the house next door, sat on the stairs and waited until a pizza delivery man pulled up in the driveway. Tina stated that after the driver handed Tom the pizza, Tom set it on the stairs and then went back to the driver and pointed his left hand toward him. His right hand was in his pocket. The driver then exited the vehicle and Tom got in and drove off toward Arlington. Tina stated that Tom was wearing her tan Carhartt jacket at the time of the robbery, although she also stated that she never got her coat back from Tom after the robbery. When questioned about appellant, Tina stated that she thought he had been at her home earlier that evening. She also stated that at the time of the robbery, appellant's right arm was broken. After witnessing the robbery, Tina went to bed, but her friend Alicia stayed up and continued to watch out of the window.
 {¶ 16} Alicia Salazar also testified that she and Tina watched out of Tina's window as Tom robbed the pizza delivery driver and then drove off in his car. She also stated that Tom was wearing a light colored hooded sweatshirt during the robbery and that although she did not see a gun in Tom's hand, he gestured toward the driver as if he had a gun. Alicia stated that after the robbery, Tina went to sleep but she stayed up and watched as the police arrived. Neither she nor Tina spoke to the police to tell them what they had seen. Although Alicia stated that she knew appellant, she testified that she did not see him on the night of the robbery.
 {¶ 17} Charles Weills, appellant's stepfather testified that on October 20, 2001, he picked up appellant at about 7:30 p.m. and brought him home. The two then spent the entire evening watching television, after which Weills went to bed at approximately 2:30 a.m. Weills insisted that he remembered the events of that evening because on the following day, October 21, his granddaughter called him and told him about the robbery.
 {¶ 18} Appellant's counsel then called witnesses who testified that Tom Wallace made statements implicating himself in the robbery. The court allowed these witnesses to testify over the state's objections after concluding that Wallace was unavailable and made statements against his own interest. The court found that the statements were trustworthy because one was made to a police officer in a courthouse jury room and was corroborated by two eyewitnesses who stated that they saw Wallace commit the offense. The court further noted that one of those witnesses, Alicia Salazar, was a disinterested witness. Accordingly, the court permitted the hearsay statements to come into evidence under Evid.R. 804(B)(3).
 {¶ 19} Michelle Chester, appellant's girlfriend at the time of the trial, testified that on three occasions, she heard Wallace make statements implicating himself in the robbery. On the first occasion, she was with appellant when they saw Wallace. At that time, appellant knew that he had been implicated in the robbery and Wallace told appellant not to worry, that he would take care of it and that appellant would not be charged with the crime. On the second occasion, she was at Carol Menifee's house with appellant and Wallace after appellant had been released from jail on bond. Chester testified that appellant had spent three months in jail before being released and Wallace told him that he let appellant stay in jail because he, Wallace, wanted to spend the Fourth of July with his children. He then told Chester and Wallace that he was going to go and confess to the crime at that time. Finally, on the third occasion, she and appellant had given appellant's brother a ride to his truck when they encountered Wallace. Chester testified that Wallace approached her and appellant in Chester's car and "basically said he was going to take care of it again. Yes, he knows that it's wrong. He was going to take care of it. He's sorry. Don't worry. That kind of thing." On cross-examination, however, Chester admitted that she never contacted the police to tell them who the perpetrator was.
 {¶ 20} Appellant also called Thomas Gauley to testify. Gauley is the son of Carol Menifee and the brother of Tina Gauley. Thomas testified that sometime after April 2002, he was at his mother's home at 1351 Laurel when he had a conversation with Tom Wallace in which Wallace admitted to having committed the robbery and stated that he felt bad that appellant was in jail for it. On cross-examination, however, Gauley also admitted that he never revealed this information to the police.
 {¶ 21} Finally, appellant recalled Detective Rick Singlar to the stand to question him about his interview of Tom Wallace. Singlar testified that on July 11, 2002, Wallace voluntarily came down to the courthouse where Singlar interviewed him in a jury room. Singlar presented Wallace with a standard waiver of rights form which Wallace read and signed in his presence. Singlar then questioned Wallace, who confessed to committing the robbery of Donald Kincaid. Singlar testified, however, that he did not believe Wallace's confession. Appellant's trial counsel did not object to that testimony. Finally, Singlar testified that Wallace was subsequently scheduled to come to the police headquarters for questioning but that he failed to appear.
 {¶ 22} In rebuttal, the state recalled Michelle Chester and Donald Kincaid. Chester testified that just before Wallace came down to the courthouse and confessed to Singlar, he had spent several days with appellant's father. Kincaid then testified that he was at the courthouse on July 11, 2002 and saw the individual who went into the jury room with Detective Singlar. He further stated that on the first day of trial, he saw the same individual in the hallway. He described the individual as having dark hair and weighing about 140 pounds. He was certain that that individual was not the man who robbed him and testified that he was equally certain that appellant was the person who robbed him.
 {¶ 23} Finally, the parties entered into a stipulation regarding Tom Wallace which the court read to the jury. That stipulation reads: "That a subpoena was issued for Thomas Wallace by the defendant's lawyer requiring him to appear and be a witness in this trial. Thomas Wallace did not appear this morning in response to that subpoena. At the request of the defendant's lawyer, I issued an arrest warrant for Thomas Wallace, requiring him to be brought back here to court and to testify. Toledo Police officers attempted to find him at his last known address in order to serve the arrest warrant. And they could not find him today."
 {¶ 24} At the conclusion of the trial, the jury returned a verdict of guilty on the charge of aggravated robbery. The jury further found that appellant had a firearm on or about his person or under his control while committing the offense of aggravated robbery and that he displayed it, or brandished it, or indicated that he possessed it, or used it to facilitate the offense of aggravated robbery. The court subsequently sentenced appellant to four years incarceration on the aggravated robbery conviction and an additional consecutive, mandatory three year term on the firearm specification, for a total sentence of seven years. It is from that judgment that appellant now appeals.
 {¶ 25} In his first assignment of error, appellant asserts that he was deprived of the effective assistance of counsel during his trial below.
 {¶ 26} To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988),37 Ohio St.3d 153, 155-156.
 {¶ 27} We note that effective assistance of counsel does not equate with a winning defense strategy and debatable trial tactics do not necessarily constitute a violation of defense counsel's duties. State v.Clayton (1980), 62 Ohio St.2d 45, 49. Counsel is not ineffective simply because a better trial strategy may have been available. Id. Further, a defendant must demonstrate, not merely speculate, that defense counsel's trial tactics prejudiced him. See State v. Bradley (1989),42 Ohio St.3d 136, 143.
 {¶ 28} Appellant first asserts that his trial counsel was ineffective in failing to object to a prejudicial question and answer posed to Detective Singlar. Upon being called as a witness by the defense, Singlar testified that on July 11, 2002, he interviewed Tom Wallace after Wallace voluntarily came in for questioning. Singlar informed Wallace of his rights pursuant to Miranda v. Arizona (1966), 384 U.S. 436. Wallace then signed a statement acknowledging that he understood his rights and that he was willing to make a statement without the presence of an attorney. Wallace then told Singlar that he had committed the robbery at issue in this case. On cross-examination, the prosecutor then asked Singlar, "Did you believe him, Detective Singlar?" Singlar answered "No, sir." Appellant's trial counsel did not object to either the question or to Singlar's answer. Rather, on redirect, appellant's counsel asked Singlar the following:
 {¶ 29} "Q. You say you didn't believe Tom Wallace?
 {¶ 30} "A. No.
 {¶ 31} "Q. Um, he knew he was being accused of a very serious crime, correct?
 {¶ 32} "A. Yes. I advised him what the charges were, yes.
 {¶ 33} "Q. And you read him all of his constitutional rights?
 {¶ 34} "A. As I read them today, yes.
 {¶ 35} "Q. I asked you early on in the defense investigation of this case to interview Tom Wallace and certain defense witnesses called today, did I not?
 {¶ 36} "A. Right."
 {¶ 37} In addition to this testimony, the prosecutor in his closing argument reiterated Singlar's opinion as to the veracity of Wallace's confession.
 {¶ 38} Appellant asserts that Singlar's opinion as to Wallace's truthfulness was plain error and that his trial counsel was ineffective in failing to object. It is wellestablished that a witness may not express his or her belief or opinion as to the credibility of another witness. State v. Boston (1989), 46 Ohio St.3d 108, 128. When a witness expresses an opinion as to the veracity of another witness, it has the effect of acting as a "litmus test" on the key issue in the case and infringing on the role of the fact finder, "who is charged with making determinations of veracity and credibility." Id. at 128-129, citing Statev. Eastham (1988), 39 Ohio St.3d 307, 312, Justice Brown, concurring. This is particularly true when an investigating police officer expresses an opinion as to whether a witness is being truthful. State v. Young, 8th Dist. No. 79243, 2002-Ohio-2744, at ¶ 70-72. The state concedes that the admission of this evidence was plain error. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is error that substantially affects the outcome of the trial. Statev. Slagle (1992), 65 Ohio St.3d 597, 605. "The appellate court must examine the error asserted by the defendantappellant in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred." Id.
 {¶ 39} A review of the testimony quoted above would suggest that appellant's trial counsel's failure to object to the improper question and answer was a matter of trial strategy given that counsel on redirect questioned Singlar about his opinion. Nevertheless, under the circumstances of this case, we must conclude that the admission of this evidence amounted to prejudicial error. The identification of the robber was a key issue at the trial below. Only one witness, the victim, identified appellant as the assailant. Although Kincaid was certain in his identification of appellant, Alicia Salazar, arguably a disinterested witness, and Tina Gauley were equally certain in their identification of Wallace as the robber. Wallace was not available to testify at the trial below and so was not technically a witness. His hearsay statements, however, were admissible under Evid.R. 804(B)(3) and, as such, we find the rule set forth in Boston to be equally applicable to this case. Wallace's hearsay statements confessing to the robbery were admitted through the testimony of Michelle Chester, Thomas Gauley and Detective Singlar. Accordingly, Singlar's statement that he did not believe Wallace was particularly harmful in this case because the jury was not able to see Wallace and judge his credibility for themselves. It also likely had the effect of boosting the credibility of Kincaid. Wallace was not just any witness. He had confessed to the robbery to the investigating police officer after being informed of his Miranda rights and had made statements implicating himself to other people. Then, after appearing for the first day of trial, Wallace left and evaded arrest upon the trial judge's issuance of a bench warrant. Under these circumstances, we cannot find that absent Singlar's statement the outcome of the trial would have been the same and the first assignment of error is well-taken in part.
 {¶ 40} Given this finding, we need not address the remaining issue in the first assignment of error or the second or third assignments of error.
 {¶ 41} On consideration whereof, the court finds that appellant was prejudiced and prevented from having a fair trial, the judgment of the trial court is hereby reversed, appellant's sentence is vacated, and this case is remanded to the trial court for a new trial. Appellee is ordered to pay the court costs of this appeal pursuant to App.R. 24.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.