DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, B.R. ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, adjudicating L.B. an abused and dependent child and adjudicating A.R. a dependent child. This Court affirms.
 I. {¶ 2} On December 6, 2004, Summit County Children Services Board ("CSB") filed a complaint in the trial court alleging that a minor child, L.B., was abused, neglected, and dependent. The complaint also alleged that L.B.'s sister, A.R., was a dependent child. As a result of the complaint, the children were placed in the emergency temporary custody of CSB on December 4, 2004.
 {¶ 3} On January 26, 2005, the trial court held an adjudication hearing. At the hearing, the court heard testimony from three social workers: Ms. Cathy Laube, Ms. Cheryl King, and Ms. Sue Wheeler. In addition, the court heard testimony from Father and from K.H. ("Mother"). At the conclusion of the hearing, the trial court found that A.R. was a dependent child and that L.B. was a dependent and abused child. The court then determined that the proper disposition for the children was to return them to the custody of Mother under the protective supervision of CSB. Father timely appealed from the trial court's judgment, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED BY ADMITTING THE HEARSAY TESTIMONY OF MS. CHERYL KING AND MS. SUE WHEELER UNDER OHIO RULE OF EVIDENCE 803(4)."
 {¶ 4} In his first assignment of error, Father alleges that the trial court erred when it admitted the testimony of the social workers who had interviewed L.B. This Court disagrees.
 {¶ 5} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984),15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 6} We begin by noting that Father has not preserved a challenge to a majority of the testimony of each social worker he seeks to exclude. At the hearing below, Ms Laube testified about her interview with L.B., relaying L.B.'s statements without objection from Father. Ms. King then testified about the allegations of abuse, answering numerous questions before Father raised an objection. Father stated his objection as follows:
"Your Honor, I'm going to raise a general objection to this." Father then moved to strike Ms. King's prior testimony, asserting four different rationales in support of its exclusion. Ms. Wheeler was then called to the stand and testified without an objection by Father. Father urges this Court to find that his "general objection" should preserve his challenge to the testimony of each social worker. We find that Father's assertion lacks merit.
 {¶ 7} Father conceded during oral argument that there exists no distinction between general and specific objections. Further, a review of the record does not support Father's contention that his objection should be treated as a continuing objection to a specific topic. As noted above, Ms. Laube was the first to testify regarding the statements of abuse made by L.B. Her testimony was never challenged by Father. Accordingly, we are not inclined to broadly construe Father's objection to relate to every witness who testified at trial. Rather, this Court finds Father's general objection, at best, analogous to a motion in limine seeking to exclude L.B.'s statements from trial, regardless of the witness testifying. Accordingly, Father was required to renew such a motion when that evidence was presented at another time during the proceedings. Maurer,15 Ohio St.3d at 259-60. Father did not renew his objection, thus waiving any challenge to the testimony of Ms. Laube, Ms. Wheeler, and the portion of Ms. King's testimony that was presented before his objection.
 {¶ 8} Father's objection, however, did timely challenge a portion Ms. King's testimony. We will review, therefore, whether her testimony was properly admitted.
 {¶ 9} In support of his contentions, Father argues that Evid.R. 803(4) is inapplicable to the testimony of social workers. Evid.R. 803(4) provides as follows:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 10} Father asserts that State v. Eastham (1988),39 Ohio St.3d 307, is binding authority that compels reversal of the trial court's decision. We disagree.
 {¶ 11} Father relies upon a separate concurring opinion inEastham for his proposition that social workers' testimony is not covered by Evid.R. 803(4). Id. at 311-12. The Ohio Supreme Court, however, had the opportunity a year later to adopt the concurring opinion in Eastham and declined to so. In State v.Boston (1989), 46 Ohio St.3d 108, the Court was again asked to consider whether statements by non-physicians were admissible under Evid.R. 803(4). While noting the concurring opinion fromEastham, the Court did not adopt it as a rule of law, instead reversing on other grounds. Id. at 129. Specifically, the Court noted as follows:
"Another dilemma in applying Evid.R. 803(4) is whether a statement by a child to a psychologist, counselor, social worker, minister, etc., is admissible under the medical diagnosis or treatment exception." Id. at 122.
 {¶ 12} Since Boston was decided, Ohio appellate courts have unanimously found that the statements of children to social workers and counselors are admissible pursuant to Evid.R. 803(4).State v. Rice, 8th Dist. No. 82547, 2005-Ohio-3393, at ¶ 14;State v. Azbell, 5th Dist. No. 04CA11, 2005-Ohio-1704, at ¶ 190; State v. Tillman, 12th Dist. No. CA2003-09-243,2004-Ohio-6240, at ¶ 22; State v. Ludwick, 11th Dist. No. 2002-A-0024, 2004-Ohio-1152, at ¶ 40; State v. Nasser, 10th Dist. No. 02AP1112, 2003-Ohio-5947, at ¶ 52. These courts have found that the statements at issue were made to social workers for the purpose of being referred to proper medical treatment.
 {¶ 13} In addition, this Court has held that statements made to social workers for the purpose of facilitating medical treatment are admissible under Evid.R. 804(C). State v. Major,
9th Dist. No. 21662, 2004-Ohio-1423, at ¶ 6-13. The Ohio Supreme Court declined to hear an appeal from Major. See State v.Major, 103 Ohio St.3d 1406, 2004-Ohio-3980. Thus, we are not persuaded that Eastham and Boston are binding in the manner suggested by Father.
 {¶ 14} In the instant matter, Ms. Laube testified as follows: "My job during that interview is to facilitate the medicalexam[.]" (Emphasis added.) Ms. Laube continued her testimony stating that L.B. was aware that she had been brought to see Ms. Laube because of her father.
"I asked her why she came to the CARE Center. She said, [`]Because of my dad and stuff.[']"
Ms. Laube went on to testify that following her interview with L.B., a medical exam did occur. Ms. Laube also indicated that her encounter with L.B. was brief because L.B. was inattentive during the interview. Following Ms. Laube's report to CSB, CSB referred L.B. to Akron Child Guidance and Family Solutions Center. At Akron Child Guidance, Ms. King and Ms. Wheeler became involved in interviewing L.B. As Ms. King was performing the same functions as Ms. Laube, we see no reason to determine that her counseling was not a part of L.B.'s course of medical treatment. Father, however, argues that social workers' privileges and abilities are defined by statute and that they cannot provide medical treatment. We agree. However, social workers unquestionably aid in the medical treatment of victims. As Ms. Laube testified, her initial interview is designed specifically to facilitate a medical exam. As such, Father's contentions lack merit.
 {¶ 15} Based upon the testimony adduced at trial, we find that the trial court properly invoked Evid.R. 803(4) to permit the introduction of the social workers' testimony. This Court, therefore, cannot say that the trial court's decision to admit the testimony of Ms. King was arbitrary or unreasonable. Father's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} In his second assignment of error, Father contends that trial court's decision finding L.B. to be an abused and dependent child was against the manifest weight of the evidence. This Court disagrees.
 {¶ 17} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In reOzmun (Apr. 14, 1999), 9th Dist. No. 18983, at *1. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 18} R.C. 2151.031 defines an abused child as any child who has been the victim of sexual activity. Additionally, R.C.2151.04(C) defines a dependent child as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" Juv.R. 29(E)(4) requires that these findings be proven by clear and convincing evidence.
"Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Where the evidence is in conflict, the trier of fact may determine what evidence should be accepted and what evidence should be rejected. As a reviewing court, we must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." (Internal citations and quotations omitted.) In re Dukes
(1991), 81 Ohio App.3d 145, 153.
Accordingly, we proceed to determine whether the evidence submitted proved clearly and convincingly that L.B. was abused and neglected.
 {¶ 19} In the instant matter, L.B. was referred to an ER social worker at Akron Children's Hospital when she complained of sexual abuse to a teacher. During her initial interview, L.B. testified that she had "received a whooping with a belt" by Father. Ms. Laube went on to testify as follows: "[L.B.] talked about [Father] sticking a stick in her I believe pee pee hole."
 {¶ 20} Ms. King was the next to interview L.B. and testified as follows.
"When I asked her what kind of bad things [Father] did, she stated that he used his hand and touched her private parts three times. She said he put his private parts inside of hers two times.
"* * *
"When I asked her what her private parts were, she pointed to her vaginal area."
L.B. went on to describe when and where in the house Father had touched her private parts with his hand. Ms. King then repeated that L.B. had stated that Father had put his private parts in her private parts two times. Following all of the above, Father objected, asserting that the above testimony was inadmissible under Evid.R. 804(3). As noted above, we found that the trial court did not err in admitting the testimony. Following Father's objection, Ms. King testified that L.B. informed her that Father had spanked her with an extension cord and a belt.
 {¶ 21} Finally, Ms. Wheeler counseled L.B. next and testified as follows.
"And she included in that identification in terms of the private, what she calls the privates, which was the area between her legs, and then we asked her if she had ever been touched in that part of her body, and she indicated that she had, by [Father].
"Sometimes she referred to him as `daddy,' sometimes [by name,] that he had touched her there, that her panties down and that it was on the couch in the room with the couch, is what we were told.
"Also questioned whether she had even seen his privates. She indicated that she had and that — she just went ahead and said and that he had tried to put his privates in her private."
Accordingly, even if this Court had found that Ms. King's testimony should have been excluded, the substance of her testimony was admitted through Ms. Laube and Ms. Wheeler without objection.
 {¶ 22} In defense of the allegation, Father and K.H. ("Mother") each testified. Mother testified that L.B. had never reported abuse to her and that L.B. "tells [her] everything." Father testified, denying each of L.B.'s accusations. He stated that he never assaulted L.B., that he had never sexually abused her, and that L.B. had never seen him naked.
 {¶ 23} We initially note that the credibility of witnesses is a matter primarily for the trier of fact and we give deference to that judgment. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In the instant matter, the trial court determined that L.B.'s testimony was credible. We agree.
 {¶ 24} Father urges that L.B.'s statements are not credible because her story was not identical to every party involved. We disagree. At the time of the initial filing of the complaint herein, L.B. was five years old. For such a tender age, her recantation of the facts surrounding her sexual abuse was remarkably consistent. To each social worker, L.B. recounted that she had been abused. To both Ms. Laube and Ms. King, L.B. stated that Father hit her with a belt. To both Ms. Wheeler and Ms. King, L.B. recounted the same story: Father had touched her with his hand in her private place and touched her privates with his private. Further, Ms. Wheeler indicated that L.B. understood the difference between fantasy (wishing something would happen) and reality (the event actually occurring). Ms. Wheeler was then asked whether she believed L.B. could tell the difference between the truth and a lie. She responded as follows: "I'm thinking so, but I need to further explore that." Indeed, none of the three social workers who interviewed L.B. expressed a concern regarding whether L.B. could differentiate between the truth and a lie. Further, L.B. indicated to Ms. Wheeler that "she needed to be kept safe from [Father]." Thus providing another indication that L.B. was in fact motivated to be truthful.
 {¶ 25} Father asserts, however, that Mother testified that she did not even own an extension cord, thus undermining L.B.'s claim that she was beaten with such a cord. As noted above, however, the trial court could have chosen to believe L.B. rather than Mother based upon her consistent statements to each social worker. Assuming arguendo that no extension cord existed, this case still does not present the "exceptional case in which the evidence weighs heavily against the [the trial court's judgment.]" Thompkins, 78 Ohio St.3d at 387. Other than such a minor discrepancy, we cannot find fault with the trial court's determination that L.B. was credible.
 {¶ 26} Father finally argues that L.B. must be found to lack credibility because there is no physical evidence to support her claims of abuse. We disagree.
 {¶ 27} While physical evidence would strengthen the reliability of L.B.'s statements, such evidence is not required.State v. Wilson (Apr. 1, 1998), 9th Dist. No. 18193, at *5;State v. Hall (Jan. 24, 2001), 9th Dist. No. 20089, at *11. Further, Ms. Laube testified that because L.B. did not specify the dates of the alleged abuse, there is no indication that physical symptoms would still presently exist. She also stated that often physical exams in cases of sexual abuse do not reveal physical injury.
 {¶ 28} Once L.B. is found to be credible, there is no question that she fits within the definition of an abused and dependent child. She is deemed abused by virtue of being the victim of sexual activity perpetrated by Father. R.C. 2151.031. Further, she is deemed dependent by virtue of the fact that she was repeatedly abused in her own home by Mother's boyfriend without Mother's knowledge. R.C. 2151.04(C).[1]
Accordingly, Father's second assignment of error is overruled.
 III. {¶ 29} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J., Carr, J., concur.
[1] On appeal, Father has made no argument regarding the finding that A.R. was a dependent child. Accordingly, we do not address it.