DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, F. W. ("Father"), appeals from a judgment denying his objections to an order of disposition of the Wayne County Court of Common Pleas, Juvenile Division, that adopted a case plan and continued a no-contact order prohibiting him from having any contact with his children, I.W. and S.W. This Court affirms.
 I {¶ 2} During an interview conducted by Wayne County Children Services Board ("WCCSB") intake worker Natasha Siebert at the Children's Advocacy *Page 2 
Center ("CAC") at Wooster Community Hospital on November 3, 2006, S.W., age five, disclosed that her father touched her with his hand on her vulva and that she had seen his penis. A physical exam of S.W. was conducted on November 9, 2006 by Mary Ann Belanger, a Sexual Assault Nurse Examiner and contract employee for the CAC. On November 15, 2006, WCCSB filed complaints alleging that S.W. and her seven year old brother, I.W., should be declared dependent children pursuant to R.C.2151.04(C). That same day, the court issued a no-contact order between Father and his children. Due to time constraints, the complaints were dismissed and refiled on February 15, 2007. The no-contact order remained in effect.
 {¶ 3} The court held an adjudicatory hearing on April 18, 2007. At adjudication, WCCSB called Natasha Siebert and Mary Ann Belanger to testify. Siebert testified that during her interview with S.W. on November 3, 2006, S.W. disclosed that her father had inappropriately touched her. The court admitted S.W.'s statements pursuant to the hearsay exception for statements made for purposes of medical diagnosis or treatment. Evid.R. 803(4). Belanger testified that she performed a head to toe medical trauma examination on S.W. on November 9, 2006. Dr. R. Daryl Steiner reviewed Belanger's notes and procedures, but did not examine the child himself and did not testify. Furthermore, S.W. was not called as a witness. Testifying on behalf of himself, Father recounted being similarly investigated in July, 2006 for a sexual abuse *Page 3 
allegation involving S.W., but denied ever touching her inappropriately. After hearing the evidence, the court adjudicated the children dependent.
 {¶ 4} The court held a dispositional hearing on May 1, 2007. As a result of this hearing, the court adopted the WCCSB case plan, continued the no-contact order, placed I.W. and S.W. under protective supervision of the WCCSB, gave legal custody of the children to their mother, and designated her as the residential parent.
 {¶ 5} On May 10, 2007, Father filed objections to the magistrate's decision, claiming that the adjudication was based on inadmissible hearsay and that without the admission of S.W.'s statements, there was insufficient evidence to support a finding of dependency. The court overruled the objections on July 3, 2007, finding that S.W.'s statements were admissible pursuant to Evid.R. 803(4), that a hearing to determine S.W.'s competency pursuant to Evid.R. 601 was not required, and that there was sufficient evidence to declare the children dependent.
 {¶ 6} Father has timely appealed, raising two assignments of error for our review. For ease of analysis, Father's assignments of error are combined.
 II Assignment of Error Number One "THE TRIAL COURT ERRED BY ADMITTING OUT-OF-COURT STATEMENTS OF THE MINOR CHILD S.W. WITHOUT FIRST HOLDING A COMPETENCY HEARING TO DETERMINE WHETHER THE MINOR CHILD S.W. WAS COMPETENT." *Page 4 
 Assignment of Error Number Two "THE TRIAL COURT ERRED BY ADMITTING THE OUT-OF-COURT STATEMENTS OF THE MINOR CHILD S.W. WHEN SUCH STATEMENTS WERE HEARSAY, AND BY FINDING BOTH S.W. AND I.W. TO BE DEPENDENT CHILDREN WHEN THERE WAS NO OTHER EVIDENCE OFFERED TO PROVE EITHER S.W. OR I.W. WERE DEPENDENT CHILDREN."
 {¶ 7} In his assignments of error, Father argues that the trial court erred by admitting S.W.'s out-of-court statements into evidence without a judicial determination of S.W.'s competency and that the court erred in admitting the statements pursuant to the hearsay exception for statements made for purposes of medical diagnosis or treatment. Further, Father contends that, absent S.W.'s statements, there was no evidence to find I.W. and S.W. were dependent children. We disagree.
 {¶ 8} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion "that produced a material prejudice" to the aggrieved party. State v. Roberts, 9th Dist. No. 21532, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. *Page 5 
 {¶ 9} We will first consider whether S.W.'s out-of-court statements are admissible pursuant to Evid.R. 803(4) in the absence of a judicial determination of S.W.'s competency. "Regardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment." State v.Muttart, 116 Ohio St.3d 5, 2007-Ohio-5267, syllabus.
 {¶ 10} In reliance on State v. Said (1994), 71 Ohio St.3d 473, Father argues that the Supreme Court of Ohio determined that a competency hearing is required under Evid.R. 601 to determine whether a child under ten is competent to be a witness before admitting the child's out-of-court statements. Father also cites State v. Street (1997),122 Ohio App.3d 79, and Akron v. Deem (1999), 135 Ohio App.3d 523, in further support of this proposition. However, in each of these cases, the out-of-court statements were admitted into evidence pursuant to the Evid.R. 807 hearsay exception for child statements in abuse cases rather than the Evid.R. 803(4) hearsay exception for statements made for purposes of medical treatment or diagnosis.
 {¶ 11} There are fundamental differences between Evid.R. 807 and Evid.R. 803(4). With respect to an out-of-court statement made by a child under twelve years of age at the time of trial regarding inappropriate sexual acts, Evid.R. 807 specifically requires the court to find that "the totality of the circumstances *Page 6 
surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804." Evid.R. 807(A)(1). In contrast, Evid.R. 803(4) contains no such requirement. Muttart notes that whereas Evid.R. 807 contains a "totality of the circumstances test," the Evid.R. 803(4) test requires only that a statement be made for medical diagnosis or treatment to be deemed admissible. Muttart at ¶ 37. Muttart continues: "in Said we expressly stated that `a trial court must find that a declarant under the age of ten was competent at the time she made the statement in order to admitthat statement under Evid.R. 807.' (Emphasis added.)" Id. at ¶ 44, quoting Dever, 71 Ohio St.3d at 411. Moreover, Muttart observes that inSaid, the Court noted that the excited-utterance hearsay exception also does not require a competency hearing of a child declarant because of the unique nature of excited utterances. Id. at ¶ 45. Muttart concludes: "[s]imilar to the excited-utterance exception, the medical-treatment exception has inherent reliability that is not extant in Evid.R. 807." Id. Thus, Muttart holds that if the child's statements are made for purposes of medical diagnosis or treatment, they are admissible as an exception to the medical purposes hearsay rule regardless of whether the child has been determined to be competent. Id. at ¶ 46.
 {¶ 12} Father cites State v. Wallick (2003), 5th Dist. No. 2003AP020018, 2003-Ohio-4534, to support the proposition that an Evid.R. 601 competency determination is required to determine if the child declarant was able to accurately *Page 7 
receive, process, and repeat information in the declaration before admitting a child's statements under the Evid.R. 803(4) medical exception. Specifically, Father contends admitting statements as evidence under the medical hearsay exception requires "sufficient indicia of enough trustworthiness and reliability to allow their admission." Id. at ¶ 17. However, "[i]n cases in which a statement was made for purposes of medical diagnosis or treatment, the question is not whether the statement is reliable; the presumption is that it is."Muttart, at ¶ 47. To the extent Wallick conflicts with the holding inMuttart, Muttart is controlling.
 {¶ 13} In explaining the rationale for the presumption of reliability in the medical hearsay exception, Muttart first points to the "selfish-motive doctrine." Id. at ¶ 34. Muttart describes the selfish-motive doctrine as "the belief that the declarant is motivated to speak truthfully to a physician because of the patient's self-interest in obtaining an accurate diagnosis and effective treatment." Id. However, Muttart recognizes the limitations of relying upon the selfish-motive doctrine when dealing with young children:
 "`Of course, none of the courts pause to indicate how * * * children of very tender years can be considered to be giving a medical professional specific symptoms and complaints to assist in diagnosis or treatment. The reason is obvious — as is the dilemma. The reason is that we really know that such a young child is not giving the doctor the information for the purposes required by Evid.R. 803(4). More than likely, the child does not even want to be seeing the doctor'" Id. at ¶ 35, fn. 3, quoting State v. Boston (1989), 46 Ohio St.3d 108, 122, overruled on other grounds. *Page 8 
 {¶ 14} Muttart then notes that the presumption of reliability in the medical hearsay exception depends not only on the selfish-motive doctrine, but also on the "professional-reliance factor." Id. at ¶ 40. In regard to the professional-reliance factor, Muttart indicates: "`The general reliance upon `subjective' facts by the medical profession and the ability of its members to evaluate the accuracy of statements made to them is considered sufficient protection against contrived symptoms. Within the medical profession, the analysis of the rule appears to be that facts reliable enough to be relied on in reaching a diagnosis have sufficient trustworthiness to satisfy hearsay concerns.'" Id. at ¶ 41, quoting Dever, 64 Ohio St.3d at 411, quoting 2 McCormick on Evidence (4th Ed.1992) 250. Muttart concludes: "Although physicians and psychotherapists are not infallible when diagnosing abuse, we believe that their education, training, experience, and expertise make them at least as well equipped as judges to detect and consider those possibilities." Id. at ¶ 42. To the extent that the applicability of the selfish-motive doctrine is limited with respect to young children, the presumption of reliability is more heavily dependent upon the professional-reliance factor. At age five, S.W.'s statements are presumed reliable under the medical hearsay exception primarily in reliance upon the expertise of the professionals who examined her. That such reliance necessarily includes whether the child declarant was able to receive, process, and repeat accurately information at the time of the events at issue and at the time of the declaration to a medical care provider does not weaken *Page 9 
the professional-reliance factor. Evaluation of such factors is the essence of the art of medicine. To hold otherwise would be to undermine and swallow entirely Muttart's holding that no independent determination by the court of a child declarant's competency at the time the statements were made or a determination of the reliability of her statements was necessary. The trial court did not err by not requiring a judicial competency determination before admitting S.W.'s out-of-court statements as evidence.
 {¶ 15} Next, we will consider the question of whether the trial court abused its discretion by admitting S.W.'s out-of-court statements pursuant to the Evid.R. 803(4) medical hearsay exception. The issue is whether her statements were made for medical diagnosis or treatment purposes rather than for some other purpose. In Muttart, the Supreme Court of Ohio notes that the trial court "retains the discretion to admit the [child's] testimony after considering the circumstances surrounding a child victim's statements." Id. at ¶ 48. The Court provides the following guidance in determining the purpose of the statements:
 "The trial court's considerations of the purpose of the child's statements will depend on the facts of the particular case. At a minimum, we believe that a nonexhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner; (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a `bitter custody battle;' and (3) whether the child understood the need to tell the physician the truth. In addition, the court may be guided by the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of her declarations. In addition, the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure *Page 10 
of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse." (Internal citations omitted.) Id. at ¶ 49.
 {¶ 16} In the instant case, the trial court noted that during her November 3, 2006, interview with S.W. at the Wooster Community Hospital CAC unit, Siebert used the "touch survey protocol" to encourage S.W. to discuss her family situation. During this interview, S.W. divulged that her father had touched her private area underneath her clothing. Siebert testified that her meeting with S.W. was the first step in a medical diagnosis according to the protocol of the CAC. The process continued six days later when Belanger, a registered nurse, performed a medical examination on S.W. at the CAC. Dr. Steiner then reviewed Belanger's notes and procedures, although he did not examine S.W. himself.
 {¶ 17} Further, the trial court cited In re A.R. L.B., 9th Dist. No. 22836, 2006-Ohio-1548, and State v. Major, 9th Dist. No. 21662,2004-Ohio-1423, for the proposition that statements made to social workers for the purpose of facilitating medical treatment are admissible under the medical exception to hearsay. The court noted that the fact that S.W. made her statements to Siebert, a social worker, is not grounds for excluding them from the hearsay medical exception.
 {¶ 18} The trial court found that both caseworker Siebert and nurse Belanger were properly qualified to testify as to statements made by S.W. Further, the trial court found that S.W. made her statements involving sexual touching to *Page 11 
Siebert during preparation for a medical diagnosis carried out by Belanger under the supervision of Dr. Steiner. As such, the court found that Evid.R. 803(4) was the proper rule to apply.
 {¶ 19} There is nothing in the record to suggest that the trial court erred in making these findings. Siebert elicited S.W.'s statements using standard CAC protocol. She began the interview with some age appropriate exercises to assess S.W.'s understanding of the need to tell the truth. She determined that S.W. understood the truth and would tell the truth. While Father suggested in his testimony that there may have been a motive for others to coach S.W. not to tell the truth, we are not persuaded that S.W.'s statements were tainted. Siebert continued the interview by using stick figure diagrams to elicit information from S.W. regarding the types of touching S.W. experienced and who touched her in various ways. During the course of the diagramming, S.W. revealed the inappropriate sexual touching. There is no indication that Siebert's interview questions were made in a leading or suggestive manner.
 {¶ 20} Further, S.W. made the statements involving sexual touching to Siebert and other statements to Belanger in the context of medical diagnosis. While Belanger characterized her examination of S.W. as a "medical forensic exam," she also indicated that this was a thorough head to toe trauma exam and that the results would be reviewed by Dr. Steiner to determine if further treatment was warranted. *Page 12 
 {¶ 21} Finally, Siebert and Belanger were properly qualified to testify as to statements made by S.W. Siebert testified to having five years experience as an intake caseworker with degrees in psychology, sociology, and urban studies. She also completed numerous training programs relevant to her position. Belanger testified that she has been a Sexual Assault Nurse Examiner since 1998 and likewise has had considerable education and training. The court certified Belanger as an expert witness with regard to sexual assault testing and evaluation.
 {¶ 22} Applying the totality of the circumstances test, we find the trial court did not abuse its discretion in finding that S.W.'s hearsay statements were made for purposes of medical diagnosis and thus sufficiently reliable to be admitted through the testimony of Siebert and Belanger.
 {¶ 23} As a final matter, Father argues that absent the admission of S.W.'s out-of-court statements, there is no evidence to support a finding that I.W. and S.W. were dependent children pursuant to R.C.2151.04(C). Because S.W.'s statements were properly admitted pursuant to Evid.R. 803(4), there is no need to consider this argument. Having the evidence before it, the trial court found I.W. and S.W. to be dependent children.
 {¶ 24} Father's first and second assignments of error are overruled. *Page 13 
 III {¶ 25} Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 14 
 MOORE, P. J. DICKINSON, J. CONCUR *Page 1